SARAH VAN WITSEN, and others *vs.* BERTHA GUTMAN.

*Streets and Alleys—Dedication of Property to Public use—Power of Mayor and City Council of Baltimore in the matter of Closing Streets or Alleys—Rights of Abutting owners—Power of Legislature to take Private property for Public use.*

Where the owner of property in a city lying between two parallel streets, made a plat of the property, dividing it into lots, with an alley running through it from the one street to the other, and afterwards made a lease of one of the lots for ninety-nine years renewable forever, which described one of the lines of said lot as running to said alley, thence binding thereon, &c., the alley is thereby dedicated to the public as a highway.

Under the Code of Public Local Laws, Art. 4, sec. 806, the Mayor and City Council of Baltimore have the general power to close any street or alley, or any part of any street or alley, according to their discretion, and they are to be governed by their own opinion of the public welfare and convenience.

Abutting owners have interests in a street or alley which are valuable, and these cannot be taken for the public use without compensation, nor for private use on any terms whatsoever.

The Legislature has power to direct that private property shall be taken for public use, if just compensation be made in the manner prescribed by the Constitution; and it lies in its discretion to determine to what extent, on what occasions, and under what circumstances this power shall be exercised.

The Courts have no right to review or control the decisions of the Legislature on these points, but it is indispensable that the use for which private property is taken should be of a public nature, and whether the use is public or private is a question for the judiciary to decide.

In the opening and closing of streets the Mayor and City Council of Baltimore are the legislative power invested with the right to determine when private property shall be taken for the public use; and in this matter, its judgment and discretion are final, and exempt from the control of the Courts.

But where its ordinances are drawn in question, it is the duty of the judiciary to decide whether the use for which private property is taken is public or private, in the same manner and on the same principles as it would decide in the case of an Act of the State Legislature.

Where by virtue of a city ordinance a portion of a public alley is closed in such a manner as that an abutting owner of both sides of the part so closed is enabled to erect a building thereon, and the other abutting owners lose their easement in the closed portion, and the extinguishment of their interests has no relation to the public convenience or public welfare, the ordinance is invalid.

APPEAL from the Circuit Court No. 2 of Baltimore City.

This appeal was taken from a decree of the lower Court (WICKES, J.,) dismissing the bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, ROBERTS, McSHERRY and BRISCOE, J.

*Edgar H. Gans,* and *W. Burns Trundle,* (with whom was *B. Howard Haman,* on the brief,) for the appellants.

*John E. Semmes,* and *John N. Steele,* (with whom was *Francis K. Carey,* on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

The appellants were complainants in the Court below. They filed a bill in equity in Circuit Court No. 2 of Baltimore City against Mrs. Bertha Gutman. It was alleged that she was engaged in erecting a permanent stone and brick wall across the southern part of Jew alley in the city of Baltimore, and that this wall will completely deprive the complainants of their right of way over a portion of said alley. The prayer of the bill of complaint was that the defendant should be perpetually enjoined from ob-

structing the alley, and that she should be required to take down and remove the wall which had been erected. The defendant filed her answer, and after testimony and hearing the Court dismissed the bill, with costs.

All of the parties to this suit deduce their titles from the same grantors through sundry mesne conveyances. In 1829 the trustees for the owners of a tract of land in the city of Baltimore made a plat of the property, and on said plat laid off and designated certain lots, and an alley running through said property from north to south. Mrs. Gutman is now the owner of ten of these lots, five of them binding on the east side of the alley, and five lying directly opposite on the west side. The complainants own other lots binding on the eastern side of the alley. The first deed in point of time mentioned in the record, which conveys any of these lots, is a lease from the trustees to Skipwith H. Coale for ninety-nine years, with the usual covenants for renewal. It is dated October 31st, 1829. It describes one of the lines as running " to a *public alley* laid out by the trustees, and called Jew alley, thence binding on said Jew alley southerly," &c., &c. All of the conveyances under and through which the complainants claim contain references to this alley as one of the boundaries of their lots. This alley runs from Marion street on the south to Lexington street on the north, and is eighteen feet wide at the southern, and twelve feet wide at the northern end. Mrs. Gutman's lots lie at the southern end fronting seventy-three feet five inches on each side of it. Her deeds do not appear in the record, but her title is admitted by agreement of counsel. We infer that it is leasehold, but its character is not distinctly stated, nor is it of any consequence in enabling us to decide the questions in this case. On May the third, eighteen hundred and ninety-three, the Mayor and City Council of Baltimore passed two ordinances. The first authorized and directed the condemnation and closing of that portion of Jew alley which bounds

each side of the lots of Mrs. Gutman. Proceedings for the closing of the alley have been conducted according to the regular forms required by law. And claiming authority from the ordinance and the proceedings thereunder, Mrs. Gutman has commenced to build the wall in the bed of the alley which the complainants seek to abate. She also claims the title to the bed of the alley in fee. The Mayor and City Council of Baltimore have kept this alley in repair for more than twenty years, and have exercised control over it during all that time.

The questions in the cause have been argued on both sides with remarkable ability by the respective counsel. The Court is fully mindful of their great importance, and of the delicate nature of the duty which it is required to perform. We think that the alley in question was dedicated to the public as a highway by the lease to Coale in 1829. The lot leased is described as binding on a *"public alley,"* designated as Jew alley. Now, under the accepted authorities, there ought to be no question as to the meaning of this description. It was in legal effect an implied covenant that Coale should have a right of way over the alley as a *public alley.* This question was decided in *White vs. Flannigain,* 1 *Md.,* 525, and in *Moale vs. Mayor and City Council of Baltimore,* 5 *Md.,* 314. In *McMurray vs. Mayor &c. of Baltimore,* 54 *Md.,* 103-112, the legitimate consequences of this ruling were stated. The Court said: "Where an owner of land exhibits a map of it, in which a street is defined, though not yet opened, and sells building lots with front or rear on the street, and makes no express reservation, he dedicates the street for public use, and, if in a city, surrenders it for all public purposes." And in *Balto. & Ohio Railroad Co. vs. Gould, Trustee,* 67 *Md.,* 60-63, it was considered as settled that under such circumstances there was a dedication of a street to the use of the public as a street. It is thought that no one will suppose that there can be any difference between

the modes of dedicating a public alley and a public street. As a matter of course, whatever rights in the alley may have been conveyed subsequently to the lease to Coale, they were subordinate to the public right acquired by the dedication. The city of Baltimore accepted the dedication, and dealt with the alley as one of its highways. The Mayor and City Council of Baltimore have the general power to close any street or alley, or any part of any street or alley, according to their discretion. They are to be governed by their own opinion of the public welfare and convenience. But they must provide for ascertaining the amount of damage to any owner or possessor of land, which will be caused by the closing, and for paying compensation to him, or investing the amount of it in city stock for his benefit, before the closing shall take place. Public Local Laws, Article 4, section 806. It is recognized by the statute that abutting owners have interests in the street or alley which are valuable, and that these cannot be taken for the public use without compensation. It is believed that no one will contend that they can be taken for private use on any terms whatsoever. Certainly such a doctrine has never at any time found any toleration in this State. The Supreme Court of the United States in *Wilkinson vs. Leland et al.*, 2 *Peters*, 657, said: " We know of no case in which a legislative act to transfer the property of A to B without his consent, has ever been held a constitutional exercise of legislative power in any State of the Union." Another high authority has said that such a transaction would be robbery and not legislation. As the appellants' property cannot be taken from them by any power known to the law, except for the public use, they must necessarily have a right to the protection of the Courts, if an attempt should be made to take it for any private purpose. Wherever the legislative body has not unlimited power, every suitor must have a right to obtain from the Courts the decision of the question whether it has exceeded its powers

in dealing with his property. And wherever this power is limited the Courts must so declare, and restrain it within its legitimate boundaries. There seems to be a general concurrence of opinion that the Courts must determine whether the use for which a citizen's property is taken be public or private. It is so held by the Supreme Court of the United States. *Shoemaker vs. United States,* 147 *U. S.,* 298. And it is certainly the doctrine of this Court. It was very tersely expressed by Chief Justice ALVEY in *New Central Coal Company et al. vs. George's Creek Coal and Iron Company,* 37 *Md.,* 560. He said: "Whether the use, in any particular case, be public or private is a judicial question; for otherwise, the constitutional restraint would be utterly nugatory, and the Legislature could make any use public by simply declaring it so, and hence its will and discretion become supreme, however arbitrarily and tyrannically exercised." After this decision of our own Court, it is unnecessary to cite any of the multitude of other cases to the same effect. The Mayor and City Council of Baltimore is required to condemn, among other things, the rights of the abutting owners on a street or alley before it can be closed. This condemnation cannot be made except for a public use, and therefore in the case only of such a use is the closing lawful. We will proceed to inquire into the character of the use for which these interests have been condemned. And we shall lay out of our view all the testimony respecting the arguments made before the committee of the City Council, when the advocates and opponents of the ordinance appeared before them. We shall found our opinion upon the facts and circumstances which exhibit the nature and character of the ordinance and the objects and results which it would accomplish. As has been already stated, Mrs. Gutman owns lots on both sides of this alley at its southern extremity. The ordinance enacts that the portion of the alley shall be closed which lies between her lots.

Van Witsen et al. *vs.* Gutman.

And on the same day another ordinance was passed, which directed the same alley to be widened for a distance of twenty-five feet northerly from Mrs. Gutman's property, so as to add seven feet to its width; and it was provided that Mrs. Gutman was to convey the land to the city for the purpose of this widening. These two ordinances relate to the same subject, tend to consummate the same object, and must be considered as parts of the same transaction. The result of them would be that Mrs. Gutman would have access to her property by Marion street on the south; and immediately north of her property the alley would be twenty-five feet wide for a distance of twenty-five feet, and from that point the original width of the alley would continue to Lexington street; while all the other lots on the alley would be debarred from the access to them from Marion street. It is shown by the condemnation proceedings, and by agreement of counsel, that Mrs. Gutman is to pay the whole expense incurred by the closing of the alley, including the benefits arising therefrom. The money paid by her for benefits is, of course, to be applied in satisfaction of the damages sustained by the complainants and others in consequence of the closing. They lose their easement in the closed portion, and she is thereby enabled to erect a building upon it. This is palpably and plainly taking their private property for her private use. In other words, it is a forced sale to her of their property. The extinguishment of their interests does not appear to enure in any way to the public service; nor to tend to the relief of any public necessity, nor to promote any public interest, nor to subserve any public purpose, nor to be connected with anything used by the public, nor, in short, to have any relation to the public convenience or public welfare. The Legislature has the power to direct that private property shall be taken for the public use, if just compensation be made in the manner prescribed by the Constitution. It lies in its discretion to determine to what extent, on what occasions,

and under what circumstances this power shall be exercised. The Courts have no right to review or control its decisions on these points; but it is indispensable that the use for which private property is taken should be of a public nature. And, as we have said, whether the use is public or private is a question for the judiciary to decide. In the opening and closing of streets, the Mayor and City Council of Baltimore is the legislative power invested with the right to determine when private property shall be taken for the public use. In this matter its judgment and discretion are final and exempt from the control of the Courts. But where its ordinances are drawn in question, it is the duty of the judiciary to decide whether the use for which private property is taken is public or private, in the same manner and on the same principles as it would decide in the case of an Act of the State Legislature.

It will be seen that we consider the ordinance for closing Jew alley invalid. The decree of the Circuit Court must be reversed, with costs, above and below, and the cause remanded, in order that a decree may be passed in accordance with the prayer of the bill of complaint.

*Decree reversed,*
*and cause remanded.*

(Decided 20th June, 1894.)