STATE ROADS COMMISSION *v.* FRANKLIN ET UX.

[No. 113, October Term, 1952.]

550

*Decided March 11, 1953.*

552

The cause was argued before DELAPLAINE, COLLINS and HENDERSON, JJ.

*Joseph D. Buscher,* Special Assistant Attorney General, and *Edwin T. Steffy,* Special Attorney, with whom were *Edward D. E. Rollins,* Attorney General, and *Frederick A. Puderbaugh,* on the brief, for appellant.

*Edward H. Burke,* with whom were *Jenifer & Jenifer* and *Bowie, Burke & Leonard,* on the brief, for appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment entered as the result of the Circuit Court for Baltimore County granting appellees' motion for a directed verdict.

On October 6, 1952, the State Roads Commission of Maryland, (the Commission), appellant here, filed an amended petition to condemn for the construction and maintenance of the highway system of the State and for an "expressway", land in Baltimore County, the property of General John M. Franklin and wife, appellees here, as the petitioner alleged that it had been unable to make an agreement to purchase with the appellees. After an answer was filed by the appellees, by stipulation certain depositions were taken in the office of the Commission in Baltimore. Testimony was also taken in open court before the trial judge. The jury viewed the property and extensive argument was heard, after which a directed verdict was rendered in favor of the appellees. From the judgment entered thereon, the appellant appeals.

The appellees contend that the Commission has no power to condemn for the Baltimore-Harrisburg expressway here contemplated. The basic power of the Commission to condemn land and other property rights in order to construct highways is contained in Section 7 of Article 89B (1951 Code) which gives it the power to "* * * adopt and employ such means, methods or system of road construction, improvement and develop-

ment as may, *in its judgment,* be best calculated to promote the objects of this Article; condemn, lay out, open, establish, construct, extend, widen, straighten, grade and improve, *in any manner,* any main road, of the system, in any county of this State * * *; acquire for the State of Maryland, by agreement, gift, grant, purchase or condemnation proceedings * * * any private road or roads whatsoever, or private property, or rights of drainage for public use, * * * and including any avenues, roads, lanes or thoroughfares, *rights or interests,* franchises, *privileges* or easements, that may be, *in its judgment,* desirable or necessary to complete said system of roads to carry out the purpose of this Article". (Emphasis supplied here).

An expressway is defined by subsection (c) of section 18 of Article 89B (1951 Code) as follows: "The term 'expressway' shall mean a major thoroughfare of two or more traffic lanes in each direction, designed to eliminate principal traffic hazards, and shall embrace all bridges, tunnels, overpasses, underpasses, interchanges, entrance plazas, approaches, and other structures which the Commission may deem necessary to the operation of the expressway, together with all property, rights, easements, franchises and interests acquired by the Commission for the construction and operation thereof, and having the following characteristics: (a) a median divider separating opposing traffic lanes to eliminate head-on collisions and side-swiping; (b) grade separation structures to eliminate the conflict of cross streams of traffic at all intersections; (c) points of access and egress limited to predetermined locations; (d) vertical curves of lengths sufficient to provide long sight distances; and (e) shoulders of widths adequate to permit vehicles to stop or park off traffic lanes."

In sub-section (e) of section 20 of Article 89B it is provided:

"* * * that no expressway shall be constructed to serve a traffic volume of less than an average of 5,000 vehicles per day, and no controlled access arterial highway shall

be constructed to serve a traffic volume of less than an average of 3,000 vehicles per day, such traffic volumes to have been determined over a period of one year prior to the initiation of the project by procedures heretofore used by the State Roads Commission to establish densities of traffic."

Section 154 of Article 89B provides: "Any project involving construction of one or more sections of expressway, or one or more sections of controlled access arterial highway, shall be continuous and shall have each of its terminii (a) at or within the limits of a city or town of the State, which city or town is recognized by the Commission as a principal traffic generating center, or (b) at a connection in this State or at the State boundary with a route recognized by the Commission as a principal traffic distribution, collection or dispersal artery. No expressway shall be constructed to serve a traffic volume of less than an average of 5,000 vehicles per day, and no controlled access arterial highway shall be constructed to serve a traffic volume of less than an average of 3,000 vehicles per day, such traffic volumes to have been determined over a period of one year prior to the initiation of the project by procedures heretofore used by the State Roads Commission to establish densities of traffic." The appellees specifically contend that the requirements as to terminii in Section 154, *supra,* have not been met. It appears that the contemplated southern terminus of the expressway will be the circumferential Beltway in Baltimore County which is to be the East-West Expressway. It is true that at the time of the hearing before the trial judge the exact location of the Beltway had not been decided upon. However, we are informed that prior to the decision of the trial judge this location had been decided upon and published in the public press. It is contemplated that the northern terminus will be the point where the expressway, to be built south from Harrisburg by the State of Pennsylvania, strikes the Maryland line in the vicinity of the present U. S. Route 111. It is true that very little has

been done by the State of Pennsylvania to construct this proposed expressway. It is contemplated in the building of roads that it sometimes becomes necessary to change slightly the exact location of the road. This is recognized by Article 89B, section 53, which provides: "It shall be lawful for the State Roads Commission to make from time to time, such changes as it may seem desirable in the projected locations of any road authorized to be constructed hereunder." If appellees' argument were sound it would be necessary for Maryland to wait until the Pennsylvania end of the expressway at the Maryland line was completed before starting the Maryland expressway. There is nothing in Section 154, *supra,* which specifies that the *terminii* be actually located at the time the building of the expressway is begun. All of the proposed expressway could not be built at the same time. It was said by the Supreme Court of the United States in *Rindge Co. et al. v. County of Los Angeles,* 262 U. S. 700, at page 707, 43 S. Ct. 689, 693, 67 L. Ed. 1186: "Public-roads systems, it is manifest, must frequently be constructed in instalments, especially where adjoining counties are involved. In determining whether the taking of property is necessary for public use not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered." Appellees further contend that the requirement of "an average of 5,000 vehicles per day" in Section 154, *supra,* has not been met here. We think that the language "no expressway shall be constructed to serve a traffic volume of less than an average of 5,000 vehicles per day" does not mean that the traffic volume shall be that great at the time the expressway is begun. Mr. George N. Lewis of the Commission's Traffic Department, testified in detail as to the survey and analysis started in the fall of 1945 and compiled into four volumes which were published in 1947, and brought up to date in the early spring of 1951, which showed that the Commission estimated that the volume of traffic on this contemplated expressway upon its

completion would be "in the vicinity of 7,000 vehicles per day". There is nothing here to show that this study and estimate was erroneous.

The appellees further contend that the Commission has no right, under the guise of condemning for an expressway, to condemn the access rights sought to be condemned in this case. Section 8(a) of Article 89B, 1951 Code, enacted by Chapter 608 of the laws of 1951, now provides: "8(a) The State Roads Commission may acquire by gift, purchase, *condemnation* or otherwise, *real property or any interest in such property for highway construction purposes* and real property along or near any State highway, parkway or freeway, or any interest in such property, in order to protect the highway, parkway, or freeway, or scenery along or near it, or to provide parking and service areas along said highway, parkway, freeway and for similar purposes, provided, however, the State Roads Commission shall not have the right to acquire such property other than by purchase or gift unless the Commission, by appropriate resolution, shall determine that such property is necessary in its judgment for immediate or *proposed construction* of a State highway, parkway, freeway or parking or service areas in connection therewith; provided, however, that any such property acquired for such service areas shall only be adjacent to controlled or denied access highways as such highways are defined in Article 89B of the Code of General Laws of Maryland. If the State Roads Commission shall *determine by resolution* that it is necessary to acquire such property by means other than purchase or gift, then it is authorized to acquire the same in accordance with the provisions of *Section 40B of Article 3 of the Constitution of the State of Maryland, and Section 9 of this Article.*" (Emphasis supplied). At the present time the Commission is building a single lane to the State line. In the future the Commission intends to complete the expresway, which is defined under Article 89B, Section 18(c), *supra,* to be "a major thoroughfare of two or more traffic lanes in each direc-

tion, designed to eliminate principal traffic hazards, and shall embrace all bridges, tunnels, overpasses, underpasses, etc." The appellees specifically contend that as only one lane is being built at present, the Commission cannot condemn at this time the land later intended for the median divider separating the lanes of traffic, the land contemplated for the other lane of traffic, and the land necessary for grading that other lane of traffic. In building this one lane at present the Commission under the present construction is building cross-drainage structures across both lanes of the highway and grading is being done at present for the contemplated dual lane highway. As provided in Section 8(a), *supra*, the Commission by resolution passed on March 19, 1952, set out that it had approved the location and general design of the Baltimore-Harrisburg Expressway project in Baltimore County and that the land hereby sought to be condemned was necessary for that project. It appears therefore that the Commission has fulfilled the requirements of Section 8(a), *supra*. The right to condemn for future construction has been upheld in a number of cases, among which are *Clendaniel v. Conrad*, 3 Boyce, Del., 549, 83 A. 1036; *Woollard v. State Highway Commission*, (A.), 249 S. W. 2d 564; *Pittsburgh Junction R. Co.'s Appeal*, 122 Pa. 511, 6 A. 564, 567; *Vermont Hydro-Electric Corporation v. Dunn et al*, 95 Vt. 144, 112 A. 223, 226. The Commission here had determined by appropriate resolution that "it is necessary to acquire such property". There is nothing here to show that this decision to build this expressway is oppressive, arbitrary, or unreasonable, which is forbidden under the law as set out in the cases of *Murphy v. State Roads Commission*, 159 Md. 7, 15, 149 A. 566; *Johnson v. Gas & Electric Co.*, 187 Md. 454, 462, 464, 50 A. 2d 918, 170 A. L. R. 709; *Riden v. Phila. B. & W. R. R. Co.*, 182 Md. 336, 345, 346, 35 A. 2d 99, relied on by the appellees. In these days of heavy traffic, expressways, when properly determined as a necessity, are numerous throughout the United States. There is noth-

ing here to show that the Commission has not acted in good faith.

. The appellees also claim that the Commission has no authority to deprive the appellees' property of all access to the public roads, including the so-called Baltimore-Harrisburg Expressway. Under the testimony here 50 acres of the appellees' property will be deprived of all access to the public roads. Under Section 7 of Article 89B, *supra*, the Commission in its judgment is given power to condemn in any manner, "rights or interests, franchises, privileges or easements, that may be, in its judgment, desirable or necessary to complete said system of roads * * *." It would seem therefore that the Commission has the power to condemn whatever property rights are needed for expressways as defined in Section 18(c), *supra*. Under the definition of expressway in Section 18(c), *supra*, one of the characteristics is "(c) points of access and egress limited to predetermined locations". The right of access to property is a right recognized in the adjoining owner. *Elliott* on *Roads and Streets*, 3rd Ed., Vol. 2, page 321, Paragraph 882. Such a right cannot be taken away without due compensation. *People v. Ricciardi*, 23 Cal. 2d 390, 144 P. 2d 799, 803. In *Baltimore v. Garrett*, 120 Md. 608, 87 A. 1057, the Commissioners for Opening Streets condemned a strip of ground having an average width of about seven feet along the front of appellee's lot. Judge Urner said in that case, 120 Md. at page 611, 87 A. at page 1095: "In the case now before us the power of eminent domain is being exercised, and the rights of the appellee must be ascertained by reference to the principles which are appropriate to such a proceeding. The 'just compensation' required by the Constitution to be paid where private property is taken for public use includes not only the value of the part condemned, but also a due allowance of damages for injury to the remainder. [Cases cited.] It is a well settled rule that the measure of the consequential injury to the residue of the land is the difference produced in its value by the

appropriation and use of the separated portion for the purposes contemplated by the condemnation." See also *Illinois Central R. R. Co. v. Moriarity,* 135 Tenn. 446, 186 S. W. 1053; *Breinig v. County of Allegheny,* 332 Pa. 474, 2 A. 2d 842.

The resolution, *supra,* passed by the Commission on March 19, 1952, states that the Right of Way and/or Legal Departments of the Commission are authorized and directed to take such steps as are necessary (1) to enable the said Commission, its agents, employees and contractors, to enter upon and take possession of the property of the appellees as shown on the Commission plats numbers 8781, 8797, 8798, and 8799 in Baltimore County, and (2) to institute condemnation proceedings against the owners in order that immediate construction of the presently proposed project may be begun, and in order that a full, free and clear fee simple title be obtained by the Commission to the aforesaid property "together with such other rights, ways, easements and appurtenances in and over the adjacent property of the aforesaid owners as are necessary to complete and protect said Baltimore-Harrisburg Expressway project in accordance with the aforesaid general design." The appellees contend that the Commission has no power to delegate such broad authority to the Right of Way Department and/or Legal Department. The resolution, however, states that the Commission has approved the location and general design of the Baltimore-Harrisburg Expressway project in Baltimore County. This authority delegated to the Right of Way Department and Legal Department is merely to draw the necessary papers to accomplish the acquisition of the property needed to carry out the design and location of the expressway as previously approved by the Commission.

The appellant contends that it was authorized to enter upon the appellees' property prior to the condemnation trial. Section 40B of Article III of the Constitution of Maryland, provides as follows: "40B. The General Assembly shall enact no law authorizing private prop-

erty to be taken for public use without just compensation, to be agreed upon between the parties or awarded by a jury, being first paid or tendered to the party entitled to such compensation, *except that where such property in the judgment of the State Roads Commission is needed by the State for highway purposes,* the General Assembly may provide that such property may be taken immediately upon payment therefor to the owner or owners thereof by said State Roads Commission, or into Court, such amount as said State Roads Commission shall estimate to be of the fair value of said property, provided such legislation also requires the payment of any further sum that may subsequently be awarded by a jury." (Italics supplied). Section 9 of Article 89B of the Code (1951 Edition), provides, in part, as follows: "It is the intention of this Section to provide that such property and rights of way, in an emergency, *in the discretion of the Commission,* be condemned after construction of the highway has been commenced as well as prior thereto, although so far as possible all rights of way shall be acquired or contracted for before any route is definitely located. This section to apply only to acquisition of property by the State Roads Commission." (Emphasis supplied). The resolution of the Commission of March 19, 1952, also sets out that "an emergency exists with respect to the construction of the presently proposed Baltimore-Harrisburg Expressway project so that immediate entry by the said Commission, its agents, employees and contractors is necessary for said purposes." The resolution also sets out what the Commission estimates to be the fair value of the land, improvements and rights proposed to be taken. Of course if the jury finds that the value fixed by the Commission is inadequate, additional damages may be awarded. It could hardly be held that long negotiations with property owners could delay the construction of roads where the State Roads Commission in its discretion and judgment has determined that the property was needed for highway

purposes in view of the Constitution of Maryland, Article III, Section 40B, *supra,* and Article 89B, Section 9, 1951 Code, *supra.* There is nothing here before us to show that this decision of the Commission to enter appellees' property before the condemnation trial was not justified. This suit was originally filed on April 4, 1952, and almost a year has now expired before the case has been submitted to the jury. It would be difficult to build roads under any systematic program if each owner could delay construction until he had exhausted his legal remedy as to the amount of damages due him by the condemnation of his property.

It might well be that the construction of this "expressway" to be completed in the distant future will inflict hardships upon many individuals. That is a legislative problem, not judicial. Where the Legislature has conferred such powers on the Commission the question before the courts is limited to whether there is any necessity whatever to justify the taking, or whether the decision of the Commission is so oppressive, arbitrary or unreasonable as to suggest bad faith. *Murphy v. State Roads Commission,* 159 Md. 7, 15, 149 A. 566, (*supra*) and authorities there cited. We are unable to find in this case bad faith on the part of the Commission in the exercise of the powers delegated to it by the Legislature. It was recently said by this Court in the case of *Masson v. Reindollar,* (1949), 193 Md. 683, 689, 69 A. 2d 482, 485: "But we specifically hold that the Court will not control or review the exercise of the discretionary power of the State Roads Commission, unless such exercise is fraudulent or such abuse of discretion as to amount to a breach of trust. Any other rule would have the effect of substituting the decisions of the courts for the discretion reposed in the Commission, and would disrupt the policies of the Commission, taking out of the hands of a single State agency the administration of their important functions and placing them in the hands of the courts."

562

We are of opinion that the directed verdict should not have been granted but that the case should have been submitted to the jury.

*Judgment reversed with costs, and case remanded for further proceedings.*