WASHINGTON SUBURBAN SANITARY COM-
MISSION *v.* SANTORIOS ET VIR

[No. 293, September Term, 1963.]

*Decided April 8, 1964.*

The cause was submitted to BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

Submitted on brief by *John B. Kenkel* and *J. Lloyd Niles* for the appellant.

No brief and no appearance for the appellees.

HORNEY, J., delivered the opinion of the Court.

This appeal presents a question involving the right of the appellant (Washington Suburban Sanitary Commission) to condemn an easement in land owned by the appellees (Helen J. Santorios and James S. Santorios) for the extension of a public sewer line. The question of law concerning the necessity for the taking was heard separately by the trial court pursuant to Maryland Rule 502, and resulted in a dismissal of the petition for condemnation.

Among other rights and duties, the Commission is authorized by law [1] to take or acquire land and other property in fee or

1. See Chapter 122 of the Laws of 1918, and the subsequent amendments thereof, which, insofar as they relate to Montgomery (and Prince George's) County, are codified in the County Code as Ch. 73, Art. I, §§ 73-1 to 73-120, inclusive.

as an easement, "for the construction, extension or maintenance" of its water supply, sanitary sewerage or storm drainage systems, either by purchase or condemnation. Montgomery County Code (1960), § 73-45. The only legislative limitation on the right to condemn is that the taking "shall be deemed necessary" by the Commission. § 73-45, *supra.* The Commission is further charged with the duty of operating the several systems in such way as will best serve the needs of the communities and "promote convenience and economy of installation and operation." § 73-48, *supra.*

The Commission produced evidence at the hearing showing a public need for constructing an extension of the sewerage system from a problem area to an existing sewer line which in part traversed a portion of the property of the landowners as well as an adjacent 10 foot-wide road used as a public way. The proposed route of the 15 foot-wide easement needed for the extension was not selected by the Commission until after it had examined and carefully considered an alternate route in the bed of the existing roadway adjacent to the property of the owners. The final determination to place the easement wholly on that part of the property of the landowners which was immediately adjacent to the existing roadway was the result of applying sound engineering practice to promote economy and public convenience.

With respect to the placement of the easement, it was also shown that both the existing sewer line and the proposed extension were of the gravity type which meant that the extension had to be so installed as to drain to a low point. The low point in the property of the landowners, designated as the proposed connection of the extension with the existing sewer, was not the only one in the low segment of the existing sewer line which traversed the general area. There was also a low point in the bed of the roadway. But the Commission, exercising its discretion, decided that it was more practicable to place the connecting point in the property of the landowners rather than in the adjoining roadway. The principal reason for so doing was that some of the construction equipment was as wide or wider than the roadway and the taking of the roadway as a part of the necessary easement would in any event have necessitated the acquisition of an additional easement in

the property of the landowners in order to construct an extension within the boundary lines of the 15-foot wide easement. It was further shown that if the extension were constructed in the roadway rather than in the proposed easement, the construction costs would be greater and that when the existing roadway is widened, as is presently contemplated by the county authorities, the proposed easement area will be within the lines of the prospective future street.

The landowners conceded that the Commission had a right to condemn and did not question the public necessity for an extension of the sewerage system. But, although they produced no evidence of their own, they contested the placement of the easement area and contended that the proposed extension should be constructed in the adjacent roadway rather than in their property.

The lower court, having concluded that the sewer line could be constructed in the roadway with the same efficiency as would be the case by crossing the property of the landowners; that the lowest point for the connection was not on their property; and that the proof of inconvenience or economic benefit to the public was insufficient, stated that, in its view, the evidence was "overwhelming" to the effect that the proposal to cross the property of the landowners, under the existing circumstances, was "arbitrary and without the exercise of sound discretion."

The main contention of the appellant is that the trial court erroneously substituted its judgment for the discretion reposed in the Commission with respect to the route of the sewer line: and the corollary to it is that it was error to dismiss the condemnation petition on the ground that the selection of the route was "arbitrary and without the exercise of sound discretion." We agree with both the principal and supplementary contentions.

When the legislature authorizes a commission or other agency to take and acquire land in fee or as an easement for a public purpose by purchase or condemnation, the selection of the land to be condemned is a matter for the commission to decide. When the taking is challenged, the questions for the court to decide are limited to (i) whether there is any necessity whatever to justify the taking, or (ii) whether the deci-

sion of the commission is so oppressive, arbitrary or unreasonable as to suggest bad faith. *State Roads Comm. v. Franklin,* 201 Md. 549, 95 A. 2d 99 (1953) ; *Johnson v. Consolidated Gas, Electric Light & Power Co.,* 187 Md. 454, 50 A. 2d 918 (1947) ; *Murphy v. State Roads Comm.,* 159 Md. 7, 149 Atl. 566 (1930). In 1 *Nichols on Eminent Domain* (3rd ed.) § 4.11[3], it is said:

> "The necessity is for the condemnor and not for the courts to decide, and the decision of such condemnor is final so long as it acts reasonably and in good faith. If the land is of some use to it in carrying out its public object, the degree of necessity is its own affair. Whether there is any necessity whatever to justify the taking is, however, a judicial question."

Furthermore, it has been said that the necessity for the taking does not have to be absolute: all that is required is that it be reasonable under the circumstances. *Johnson v. Consolidated Gas, Electric Light & Power Co., supra,* at p. 462 (of 187 Md.).

In the case at bar, where the right to condemn was conceded and the public necessity for the extension of the sewerage system was not questioned, there was no evidence to show, nor was it ever contended, that it was not necessary for the Commission to acquire an easement in at least some part of the property of the landowners in order to construct the extension of the sewer line. It is clear therefore, since the degree of necessity was for the Commission to decide, that the easement sought to be condemned was "of some use to it in carrying out its public object." *Johnson v. Consolidated Gas, Electric Light & Power Co., supra,* at p. 461. Instead of there being evidence to the effect that there was no necessity for the taking, as the lower court found, we think there was ample evidence in the record to justify the taking of the whole of the easement sought to be condemned. See *State Roads Comm. v. Franklin, supra,* at p. 561 (of 201 Md.). Any other conclusion would result in substituting the judgment of the court for the discretion reposed by the legislature in the Commission. See *Murphy v. State Roads Comm., supra,* at p. 17 (of 159 Md.). Moreover, there is nothing in the record to even indicate, as the lower court also

found, that the decision of the Commission was so "arbitrary" and so deficient in the "exercise of sound discretion" as to suggest bad faith. See *State Roads Comm. v. Franklin, supra,* at p. 561 (of 201 Md.). See also *Masson v. Reindollar,* 193 Md. 683, 689, 69 A. 2d 482 (1949). On the contrary, we think there was sufficient evidence in the record to show that the Commission exercised honestly (and perhaps wisely) the discretion reposed in it to select the route of the extension of the sewer line. See *Murphy v. State Roads Comm., supra,* at p. 18 (of 159 Md.).

> *Order reversed and case remanded for a trial on the question of compensation for the taking; the appellant to pay the costs.*