KLINE, et al. *v.* MAYOR AND COUNCIL OF ROCKVILLE

[No. 246, September Term, 1966.]

*Decided March 9, 1967.*

The cause was argued before HAMMOND, C. J., and MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ., and MURPHY, J., Chief Judge of the Court of Special Appeals, specially assigned.

*Joseph P. Blocher,* with whom were *Linowes & Blocher, R. Robert Linowes* and *James R. Trimm* on the brief, for appellants.

*George W. Shadoan, City Attorney,* with whom was *William C. Staley, Assistant City Attorney,* on the brief for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

A condemnation jury, in March 1966, awarded appellants (Kline) $280,000 for 25 acres ($11,200 per acre) of unimproved land taken by appellee (the city) for park purposes. Kline contends the verdict should have been about $346,000 ($13,900 per acre). In this appeal he attacks both the adequacy of the award and the necessity for the taking.

In October 1963 the city, upon the recommendation of its Planning Commission, decided to buy the 25 acre site (the site) because of all the undeveloped property available for park purposes it was the most suitable. At that time the site was part of

a larger parcel (167 acres) known as the Dawson Tract. The city had been unable to acquire the site from the Dawsons by purchase. In September of 1964 Kline, fully informed of the city's efforts to acquire the site, bought the entire 167 acre tract from the Dawsons, for $6,700 per acre. The city tried, again unsuccessfully, to buy the site from Kline. A resolution directing condemnation was passed by the city council on 14 December 1964. The petition was filed 4 January 1965.

Kline, in his answer, admitted the power and authority of the city to condemn private property for public parks but he denied the allegation that it was "necessary and proper" to acquire the site. More than a year later (10 February 1966) the case came on for trial before Shook, J. A day and a half was devoted to the city's proof of necessity. Kline cross-examined all witnesses at length but he offered no evidence in opposition.[1] In fact, he challenges neither the city's good faith nor the general necessity for the taking. His complaint seems to be that the park should be put somewhere else. The following excerpt from the colloquy between the trial judge and counsel for Kline is revealing:

> "The Court: I think * * * that where a city council determined that it was necessary to have a park that this in itself would be within their discretion; * * * unless you showed bad faith or some other reason why it should not be done.
>
> "But the question as to whether the park should be here, I assume, is what you are challenging?
>
> "Mr. Blocher: That's right.
>
> "The Court: Not the actual necessity of having a park but the necessity of having this piece of ground for the park, * * *."
>
> * * *
>
> "Mr. Blocher: * * * I do not think it is necessary to take this site for a park at this location. * * * I want to explore that * * *.

---

1. Kline offered to prove through Buford M. Hayden that an alternate site would serve the city as well. The city's objection was sustained.

"The Court: So we have the record straight, then, you are not challenging the act of the City Council in determining that they need a park?

"Mr. Blocher: Well, to be specific they need parks in the City of Rockville. There is no question about that and I do not challenge they need parks. It is their criteria that they used to designate the taking of this parcel of land for park that I want to inquire into, to see why they decided that question."

At the conclusion of the testimony on the issue of necessity the trial judge said she found "nothing in the evidence before * * * [her] to indicate that the Mayor and Council [the city] have abused their discretion as to the necessity of the taking" and she noted that counsel had stipulated that the city "did make a bona fide offer for" the site. There is nothing in the record to indicate that Kline took exception to Judge Shook's ruling. Trial was resumed on the issue of damages and, for reasons undisclosed, ended in a mistrial.

Trial was again resumed on 22 March before Pugh, J. Counsel stipulated "that the issue of public necessity was tried before" Judge Shook and that she ruled "there was a public necessity to acquire * * * [the site] for park purposes—and that all of the testimony in that case will be a part of the testimony in this case today, but that the issue will not be reheard, * * * [and] no additional evidence [will be] taken on the question of necessity." Judge Pugh said he would instruct the reporter to transcribe the testimony taken before Judge Shook (together with her ruling) "so that it would be a part of the record * * * in the event of appeal * * *."

At the conclusion of the evidence Judge Pugh instructed the jury (in part) as follows:

"The sole issue in this case is what is just compensation for the land that is being taken. All other issues, that is, the issue as to whether or not it is for a public purpose, have been previously determined by the Court in another proceeding in this case. The Court therefore has determined that the taking in this case is for a public purpose. You are not permitted to pass on the

question as to whether or not this proceeding is for a public purpose. That has already been determined. The sole issue for you in this case is to determine what is just compensation."

Kline did not object to the above quoted instruction.

The right of the city, in the circumstances here present, to select the land to be condemned was firmly established by our holding in *Wash. San. Comm. v. Santorios,* 234 Md. 342, 199 A. 2d 206 (1964) and in the cases cited therein. Judge Horney, who wrote the Court's opinion in *Santorios,* said:

"* * * When the taking is challenged, the questions for the court ·to decide are limited ·to (i) whether there is any necessity whatever to justify the taking, or (ii) whether the decision of the commission [the city] is so oppressive, arbitrary or unreasonable as to suggest bad faith." *Id.* at 345-46.

Entirely aside from Kline's virtual concession of public necessity we agree with Judge Shook that there is nothing in the evidence to indicate an abuse of discretion by the city. Moreover we fail to find anything in the record which could support either a finding or an inference that the city's decision was oppressive, arbitrary or unreasonable. It seems to us entirely fair to say that the conduct of the Mayor and the Council suggests good faith. Indeed Kline has stipulated that the city made a "bona fide offer for" the site.

We are not moved by Kline's keening over the inadequacy of the damages. There is nothing to suggest such inadequacy as might warrant an inference as a matter of law that his property is being taken without the payment of just compensation. *Congressional School of Aero. v. State Roads Commission,* 218 Md. 236, 254, 146 A. 2d 558 (1958) and the cases therein cited. Kline's contention that the verdict should be set aside is, in substance, a motion for a new trial which, of course, is not ordinarily reviewable on appeal. *Congressional School, supra.* Furthermore, it seems to us Kline did quite well in the matter of damages.

Kline produced two expert witnesses. John J. Shank said the site was worth $13,900 per acre. E. L. Dieudonne, Jr.

made it $13,500. The city produced William C. Beers in whose opinion $11,000 was the proper figure. It will be noted that Beers' valuation was substantially higher than the price ($6,-700 per acre) Kline paid (18 months earlier) for the Dawson Tract. A 95 acre tract known as the McConohie Tract lies immediately to the west of the Dawson Tract. The two tracts, both unimproved at the time, are separated only by Monroe Street. On 20 October 1964 (within a month of the sale of the Dawson Tract to Kline) the McConohie Tract was sold for $1,092,500 ($11,500 per acre). On 4 March 1966 (the instant case was tried on 10 February, 1, 22, 23 and 24 March 1966) the McConohie Tract was sold again, for $1,314,800 ($13,840 per acre). Except that a portion of the Dawson Tract lies in a flood plain and that it has some topographical difficulties the comparability of the two tracts is conceded. Between the sale in October 1964 and the sale in March 1966 the McConohie Tract was rezoned from RS (suburban residential 20,000 square feet per lot) to R90 (9,000 square feet per lot) and it was approved as a Planned Residential Unit (all plans must be approved by the city). The appraisals of Mr. Shank and Mr. Dieudonne are predicated on the existence of the same type of zoning and use for the site. It will be observed that the McConohie property enjoyed a 20 per cent increase in value between October 1964 and March 1966. If we assume that the $6,700 per acre Kline paid for the Dawson Tract represents its fair market value in September 1964 and, if we assume further that the same rate of increase in value (20%) is applicable to the site, then a verdict in the neighborhood of $8,040 ($6,700 + $1,340) would seem to have been reasonable. Simple arithmetic demonstrates that the jury's verdict ($11,200) represents an increase of more than 67 per cent over the price per acre paid in September 1964.

Since the judgment of the trial court will be affirmed it will not be necessary for us to consider the city's motion to strike portions of Kline's brief and the joint record extract.

*Judgment affirmed.*
*Costs to be paid by the appellants.*