478 A.2d 315

**ANNE ARUNDEL COUNTY, Maryland**

v.

**Thomas BURNOPP et al.**

**No. 142, Sept. Term, 1983.**

Court of Appeals of Maryland.

July 16, 1984.

Victor A. Sulin, Deputy County Sol., Annapolis, for appellant.

Allan C. Westcott, Annapolis, for appellees.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

SMITH, Judge.

We shall here reverse an order of the Circuit Court for Anne Arundel County which dismissed a petition of Anne Arundel County to condemn land for a road, apparently on the grounds both of a failure to prove public necessity as well as public use.

I

Anne Arundel County is a charter county under Md. Const. art. XI–A. Maryland Code (1957, 1981 Repl.Vol.) Art. 25A, § 5(B) authorizes it to condemn property "required for public purposes in the county . . . ." Anne Arundel County Code (1982) § 1–317 authorizes condemnation of real property "necessary for a public purpose."

Sleepy Hollow Road runs easterly from Gambrills Road in Anne Arundel County. The County sought to condemn a strip 40 feet wide and about 500 feet long through the lands of appellees, Thomas Burnopp et al. (the landowners). This would connect with another portion of Sleepy Hollow Road

extending another 2,000 feet to a dead end. Legislation authorizing the acquisition had been duly passed. The budget proposals in connection with the project recited that it was necessary for the County to take over the road to make the necessary improvements so that emergency services, garbage collection, snow removal, and postal service could be provided to the residences on the remainder of Sleepy Hollow Road. The landowners in their respective answers denied that it was "necessary or proper to acquire the described property for any proper public project" and denied "that the purpose of these proceedings . . . is a bona fide public purpose . . . ."

Pursuant to the provisions of Maryland Rule 502 a the landowners requested the trial court to hold "a separate trial on the issue of public necessity for the use contemplated by the . . . proposed condemnation . . . ." At that trial the County introduced evidence of the adoption of the appropriate resolutions for condemnation. The evidence is summarized in the oral opinion of the trial judge:

"The evidence is that Sleepy Hollow Road was a private twenty foot right of way which has existed for a number of years, at least back into the '40's. It now services twenty to—twenty to twenty-four homes. The subject property, that is the subject property which is the subject of these proceedings, borders the north and south side of the road for five hundred feet in an easterly direction from Gambrills Road. That five hundred feet, over the years, has been reasonably well maintained by the adjoining neighbors, they're the defendants in this case. The road proceeds east for about one mile. The balance of this is a right of way. The Court does not know who the owners are, but I suppose I can infer and do find that the owners of that—the balance of the right of way are adjoining land owners on up the road. This part of the road, that is the road that is beyond the five hundred foot point, is poorly maintained and is subject to potholes. There are no County services provided, except for emergency fire and ambulance. There is a school bus provid-

ed for the very next adjoining neighbor to the east of the subject property. The Postal Union apparently has had enough influence to cause pressure to have that service discontinued by virtue of the fact of the condition of the road was not satisfactory to the Union or the delivery man for the purpose of the delivery of the mail. The Court has seen the photographs and sees pot—sees potholes and it is obvious the road is in a state of disrepair, but it's not unpassable. So, the residents, not all the residents, nor does the Court know whether it's a majority. The Court just does not know the number, has asked the County to acquire the property that is acquire the road and maintain the road. At one time, the County did maintain the road to the extent of blacktopping it, but that's been some years ago and the road has fallen into the state of disrepair as the photographs show. That is the road which is east of the five hundred point mark. The County, as I've said before, through legislative process including hearings has passed appropriate ordinances to acquire by condemnation, if necessary. And they not only have passed the ordinance to acquire the twenty foot right of way that these people have built their properties on, but also twenty feet more—ten feet on either side of the road. The evidence is the County services are difficult to provide—provide because [of] the condition of the road. And that in order to provide these services to the twenty to twenty-four homes, they are required to—they are required to acquire the road to maintain it, surface it and whatever is necessary to be done. To do this, the County has passed the ordinance as stated to acquire the twenty foot plus twenty foot of the defendants' property—ten feet on either side. As I said before, there is a presumption the legislative process was correct. The Court finds that as to the additional twenty feet, there has been no evidence to the effect that that

was necessary to be acquired.[1] That the acquisition of that was arbitrary and capricious, that the twenty foot road that's been there has been adequate so far as size and shape to service this roadway and the—the houses in question, that the additional twenty feet, there may be all kinds of reasons for it, but there's been absolutely no reason given to the Court. And to the contrary, reasons have been given as to why it should not be acquired to the extent that it's too close to one of the defendant's houses. And I can see fences and what have you along the property line. As to the twenty foot right of way, the question is whether there is any evidence of a reasonable necessity. The Court finds that the only evidence that it's heard and it—that it has heard evidence to the effect that it's to service the twenty-four houses in question— the twenty to twenty-four in question. And to do so, it's going to do so at the expense of the three property owners here. Now as I've said before that happens in many condemnation cases that three are hurt for the purpose of twenty-four, but there must be some kind of overriding public purpose. And the Court finds none, that this is clearly for private need and the private need is for those twenty to twenty-four houses. That I just cannot believe that if there were one house at the end of this road, that the County would even be in here. And this case would have been over a long time ago if this had been one house, one private property. And what happens if there's two, well that would be the same problem and the same situation would apply and the same situation applies as to twenty or twenty-four. That there's been no evidence to the effect that there's any public need for this purpose. The only evidence is it's for the purpose of

1. Back in the horse and buggy days of 1853 the General Assembly enacted Ch. 220 of the Acts of that year. Section 11, now codified as Code (1957, 1981 Repl.Vol.) Art. 25, § 145, provided relative to county commissioners that thenceforth "all roads which may be opened under the provisions of [that] act [ ] shall be at least thirty feet wide . . . ." Any such road was declared to be a public road.

servicing these twenty-four properties and that is the evidence that has come into the effect that that's why it was done. And for that reason, the Court finds it's being acquired for a private purpose and will dismiss the petition."

The County appealed to the Court of Special Appeals. We issued a writ of certiorari prior to argument in the intermediate appellate court.

The appellees at oral argument seemed to concede that public necessity has been shown but denied public use. Since, however, the terms "public necessity" and "public use" have both been discussed in the opinion of the trial judge and in the briefs of both the landowners and the County, we shall deal with both points.

## II

In *Murphy v. State Roads Comm'n*, 159 Md. 7, 149 A. 566 (1930), Judge Offutt said for the Court:

"Ordinarily the question of whether a proposed highway is required by public necessity is legislative rather than judicial (*Elliott on Roads and Streets*, sec. 213; *Nichols on Eminent Domain*, secs. 333, 334); and while the question as to whether the proposed use is public in its nature may ultimately become a judicial one (*Ibid.*, sec. 52; *Van Witsen v. Gutman*, 79 Md. 405 [29 A. 608]), when the Legislature has determined that a proposed improvement is public in its nature, the *prima facie* presumption is that the use thus declared to be public is public. *Nichols, Eminent Domain*, sec. 52. So too when the Legislature has determined that a proposed use is public in character, it may delegate, to a board, commission, or other agency, power to ascertain and determine what property is needed for that use, and the decision of such an agency as to the public necessity for taking particular property is not subject to judicial review unless its decision is so oppressive, arbitrary or unreasonable as to

suggest bad faith. *Nichols, Eminent Domain,* secs. 333, 334." 159 Md. at 15.

*See also Free State Realty v. City of Balto.,* 279 Md. 550, 558–59, 369 A.2d 1030 (1977); *Sollins v. Baltimore County,* 253 Md. 407, 412, 252 A.2d 819 (1969); *Kline v. City of Rockville,* 245 Md. 625, 630, 227 A.2d 217 (1967); *Wash. San. Comm. v. Santorios,* 234 Md. 342, 345–46, 199 A.2d 206 (1964).

■ There is not the slightest evidence in this case that the decision to condemn the land in question is so oppressive, arbitrary or unreasonable as to suggest bad faith. In *Santorios,* citing *Johnson v. Gas & Electric Co.,* 187 Md. 454, 462, 50 A.2d 918 (1947), Judge Horney observed for the Court, "[I]t has been said that the necessity for the taking does not have to be absolute: all that is required is that it be reasonable under the circumstances." 234 Md. at 346. We hold that public necessity was established.

### III

In *Riden v. Philadelphia, B. & W. R.R.,* 182 Md. 336, 35 A.2d 99 (1943), Judge Delaplaine said for the Court:

"In this State we have held that the words 'public use,' as written in our Constitution, mean use by the public. We hold this view for three reasons: (1) It is the primary and more commonly understood meaning of the words. (2) At the time of the adoption of the second Constitution of 1851, the first of our organic instruments to contain a limitation upon the power of eminent domain, as well as the third Constitution of 1864, and our present Constitution of 1867, there was no practice in Maryland showing a contemporaneous construction that the term 'public use' imported public benefit. (3) Our definition furnishes a more definite guide for the courts. *Arnsperger v. Crawford,* 101 Md. 247, 61 A. 413; *Dobler v. Mayor and City Council of Baltimore,* 151 Md. 154, 164, 134 A. 201; *Niles, Maryland Constitutional Law,* 192–201." 182 Md. at 342, 35 A.2d 99.

A somewhat similar statement, quoting from Lewis, *Law of Eminent Domain,* § 158, was made in *Arnsperger v. Crawford,* 101 Md. 247, 252–53, 61 A. 413 (1905), to the effect that *"public use* means the same as *use by the public."* (Emphasis in original.) Judge Pearce said for the Court of the words "public use":

> "There will be found two different views of the meaning of these words which have been taken by the Courts; one, there must be a use, or right of use *by* the public, or some limited portion of the public; the other that they are equivalent to *public utility or advantage.* If the former is the correct view, the Legislature and the Courts have a definite, fixed guide for their action; if the latter is to prevail, the enactment of laws upon this subject will reflect the passing popular feeling, and their construction, will reflect the various temperaments of the Judges, who are thus left free to indulge their own views of public utility or advantage. We cannot hesitate to range this Court with those which hold the former to be the true view. We agree with the Pennsylvania Court (*Farmers Market Co. v. Phil. R.R. Co.,* 10 Pa.Co.Ct. 25) that 'the test whether a use is public or not, is whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid, or denied, or withdrawn at the pleasure of the owner.'" 101 Md. at 253, 61 A. 413 (emphasis in original).

The issue of public use has most recently been considered by us in *Pr. George's Co. v. Collington,* 275 Md. 171, 339 A.2d 278 (1975). We there found an industrial park to be a public use.

■ There can be no dispute of the fact that condemnation of private property for a public highway or road is a proper public use. *See, e.g., Bond v. M. & C.C. of Baltimore,* 116 Md. 683, 82 A. 978 (1911). A determination that such is a public use is not affected by the fact that although the public may have the right to use a street it seldom does. A discussion of the limited use of roads with regard to

public use is contained in 26 Am.Jur.2d *Eminent Domain* § 46 (1966), which states:

> "If the public has the right to use the way at pleasure and on equal terms, the way is a public one, even though in reality it is seldom used.... The public character of a road does not depend on the degree of public necessity or convenience that requires it, the extent to which the public uses it, or the number of persons that it accommodates. If it is intended for the use of the public and may be traveled by any person who desires to use it, the power of eminent domain may properly be exercised, even though an individual or a corporation may be deeply interested in, or benefited by, the opening of the way, it accommodates some individuals more than others, it may accommodate only a limited portion of the public or even only a single family, it is to be used merely for pleasure purposes, or it is subject to certain conditions as to its use...." *Id.* at 701–02.

*See also* 29A C.J.S. *Eminent Domain* § 33, at 270–71 (1965); 2A Nichols, *The Law of Eminent Domain*, §§ 7.07, 7.22 [1] (Sackman ed. 1983).

*Arnsperger*, 101 Md. 247, 61 A. 413, and *Van Witsen v. Gutman*, 79 Md. 405, 29 A. 608 (1894), relied upon by the landowners in support of their contention that this acquisition is for an impermissible private use, are readily distinguishable. In *Arnsperger* the Court declared unconstitutional a statute which permitted condemnation of land for a private outlet to a farm. In *Van Witsen* the Court held that the City of Baltimore could not close up an alley for the sole purpose of permitting a property owner whose land abutted on both sides of the alley to build in the bed of the alley when this would have the effect of denying other landowners a right of access over that portion of the alley to a public street.

■ It is suggested that because this street is a dead end or cul de sac that this in some manner prevents it from

being for public use. This issue is considered in 2A Nichols, *The Law of Eminent Domain*, § 7.22[1] which states: "[I]t is no legal objection that a proposed highway will be a *cul de sac*, or that it will lead to the residence or place of business of but one individual, for the public may desire to visit or do business with him. If a road is to be open for public travel the purpose for which the public may wish to travel is not material, and land may be taken by eminent domain for a road which is intended solely for driving for pleasure and recreation or to furnish a view of beautiful natural scenery. Streets are frequently laid out for the purpose of opening up private land, but if a street is to be open to public travel it is well settled that it is for the public use, although it is of especial convenience or advantage to certain individuals, or even if its sole or principal object is to enhance the value of the land through which it passes ...." *Id.* at 7–129 to –132. *See also* 29A C.J.S. *Eminent Domain* § 33, at 273; 26 Am.Jur.2d *Eminent Domain* § 46, at 702; 1 Lewis, *Law of Eminent Domain* § 259, at 512–13 (3d ed. 1909); *In re Knolls Crescent, Borough of Bronx*, 117 N.Y.S.2d 835, 836–37 (1952); *The People v. Kingman*, 24 N.Y. 559, 568–69 (1862); *Highway Commission v. Thornton*, 271 N.C. 227, 243, 156 S.E.2d 248 (1967).

This Court found public uses in *New Cent. Co. v. George's Creek Co.*, 37 Md. 537 (1873) (Only use of the railroad spur was to transport coal for private business purposes.); *Pitznogle v. Western Md. R.R.*, 119 Md. 673, 87 A. 917 (1913) (Railroad condemned land containing a private road for the purpose of constructing a railroad line; the Court permitted the railroad also to condemn a portion of an adjacent tract, partly for a railroad line and partly to build a substitute private road for the benefit of those persons entitled to use the private road which it had closed.); *Marchant v. Baltimore*, 146 Md. 513, 126 A. 884 (1924) (Land condemned for the construction of wharves, piers, docks, warehouses, and buildings for rental to private users.), and

*Riden,* 182 Md. 336, 35 A.2d 99 (Land condemned for spur from a railroad's main line to a racetrack.).

The road here when completed would be just as much a part of the public road system of Anne Arundel County as any other road in that county. The public would be entitled to use it to go to and from the businesses and residences located on it. We hold that the trial judge erred when he found that the road here was not for a public use.

JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEES TO PAY THE COSTS.