577 A.2d 39

**COUNTY COMMISSIONERS OF FREDERICK COUNTY, Maryland**

v.

**William F. SCHRODEL and Kathleen T. Schrodel.**

**No. 18, Sept. Term, 1990.**

Court of Appeals of Maryland.

July 31, 1990.

Francis B. Burch, Jr. and Roger D. Redden (Kurt J. Fischer, Piper & Marbury, Baltimore, John S. Mathias, County Atty., Frederick, on brief), for petitioner.

G. Macy Nelson (Gregory L. VanGeison, James S. Aist, Anderson, Coe & King, Baltimore, David L. Johnson, Johnson, Parker & Hess, P.A., Westminster, on brief), for respondents.

Argued Before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and THEODORE G. BLOOM, Judge of the Court of Special Appeals of Maryland, Specially Assigned.

ELDRIDGE, Judge.

The County Commissioners of Frederick County own and operate the county sanitary landfill, located on Reichs Ford Road, southeast of the city of Frederick. The state permit for operating this landfill will expire in April 1991. While

the County believes that it will receive a permit extension from the Maryland Department of the Environment, the Director of the County Department of Public Works estimates that the County will be unable to use the current landfill after late 1992 or early 1993. Thus, the County is seeking additional land for a new landfill.

William F. and Kathleen T. Schrodel own property adjacent to the current landfill and operate a dairy farm on that site. The County is attempting to acquire this land as a location for the new landfill. On October 3, 1988, the County submitted a purchase option to the Schrodels, offering to pay the higher of two appraisals for the farm. The two sides were unable to negotiate an agreement for a purchase, and on September 13, 1989, the County instituted the present action by filing a condemnation petition in the Circuit Court for Frederick County.

The Schrodels initially moved to dismiss the action, arguing (1) that the County had no right to bring it because the County was still entertaining offers and submitting bids on other parcels of land, and (2) that the County had breached its obligation to negotiate in good faith before filing the suit. The circuit court denied the motion, as well as a motion for reconsideration. The Schrodels appealed, taking the position that the order was appealable under the so-called "collateral order doctrine." The Court of Special Appeals, however, dismissed the appeal, awarding costs and attorney's fees to the County because "the appeal ... was without substantial justification."

A trial date was originally set for January 16, 1990. The Schrodels moved for a continuance, and at a conference before Circuit Judge Dwyer all parties agreed upon a date of March 26, 1990.

In January, the County filed a response to the Schrodels' Request for Production of Documents. The Schrodels took the position that "[t]he substance of these documents made it apparent that the Schrodel farm was not geologically suitable for this landfill." On February 20, 1990, the Schro-

dels filed in the Circuit Court for Frederick County a separate action against the County Commissioners based on 42 U.S.C. § 1983. The Schrodels in this separate action sought to enjoin trial of the condemnation suit, and sought $25,000,000.00 in damages, plus costs and attorney's fees. The seven counts in the § 1983 action, for the most part, paralleled the Schrodels' defenses in the condemnation suit, although there was a negligence count based on alleged damage caused by the current landfill to the dairy farm. The circuit court issued an order in the § 1983 action, requiring the County Commissioners to show cause by April 9, 1990, why an injunction should not be granted against the condemnation proceedings.

On March 2, 1990, the Schrodels moved for a second postponement of the trial in the condemnation case. In their written motion, they asked the court to "postpon[e] said condemnation trial on the merits [until] a date after the Show Cause order [in the separate civil action] is first heard [sometime after April 9, 1990]." The Schrodels also stated that an expert witness for them was "out of the country and [would] not be able to testify unless the trial [were] continued to at least April 22, 1990."

At a hearing on the motion for a postponement in the condemnation case, held on March 13 and 15, 1990, the Schrodels did not argue for a postponement because of their missing expert witness. Instead, counsel for the Schrodels, in arguing that the court should postpone the condemnation trial, stated:

> "If we can convince you that [the County] will never get a permit for this property ... then they have no need for this property, and under the condemnation statute they're not allowed to take this property.... [I]f [the County] get[s] a permit [for the landfill], ... the Schrodels will withdraw their opposition to the taking ... and the County will be able to take the property and the only issue before the court will be the value. And that will be a much simpler and much shorter trial and issue that will be tried.

"... [T]he Schrodels will give their permission to the County to do ... whatever it takes ... for purposes of obtaining a permit."

Counsel did insist that there would have to be "remuneration" in the event that a permit was denied. This remuneration would compensate the Schrodels for, inter alia, test wells that would remain on their farm. The court attempted to make this suggestion a foundation for a consent decree, asking the County, "where is the difficulty in reversing the order? I mean doing the testing first and then [the trial]."

The County refused to enter a consent decree as suggested by the court. On the second day of the hearing, counsel for the Schrodels asked

"the court to render an order ... granting the continuance until such time as a permit is issued for the landfill. At that time ... the issue ... can be set in for trial on the issue of damages."

The County opposed the motion, but the court granted it, stating that counsel

"for the Schrodels ... has moved for a continuance in order to alleviate the necessity of a decision in the area of the necessity of the taking, and, ... because if the County cannot obtain the necessary permit he does not see the .... rationale in having his clients displaced.

\* \* \* \* \* \* \*

"Now, with all of those' conditions [set forth in the Order, *infra* ], I, quite frankly, can see nothing that the County would lose, or that there would be any prejudice to the County, by granting the motion for continuance.

"I will, therefore, grant the defendants' ... motion for a continuance...."

The court noted that "quite frankly, I can set the trial date right now at the conclusion of the time period [for obtaining the permit]—you know, [the County would] have to give me a better time period as to when [it would] get the permit...." The trial judge later said he would "set a date

... based upon the approximate dates which I have been informed ... that these test wells take...." The judge then "set" a date eighteen months in the future and told the parties that "[i]f it appears that [the permit process] cannot be completed by [September 1991], I expect one or both parties to let me know so that the appropriate trial date can be set. But at this point we're setting the September 1991 trial date because that date should be available."

An order was signed by the court on March 29, 1990. It read as follows:

## "ORDER

"This matter is before the Court on the Defendants' Motion for Continuance of the scheduled trial date of March 26, 1990.

"The Defendants, Schrodel, allege that they have substantial evidence that the Plaintiffs, County, will not be able to obtain a permit from the appropriate authority to construct a landfill and ask this Court to continue this matter until such a permit is granted.

"The Plaintiffs, County, concede that it has no need for the said property if a permit for a landfill is not granted.

"This Court is concerned that the County may condemn the Defendants', Schrodel, property and thereafter be unable to use same for a landfill should the permit not be granted.

"The Plaintiffs failed to present any prejudice they would suffer by the continuance, providing the Defendants, Schrodel, would give them free access to the property for the purpose of the permit applications and procedures.

"WHEREFORE, upon consideration of the Defendants' Motion and all counsel having been heard and other matters of record, it is this 29th day of March, 1990 by the Circuit Court for Frederick County,

"ORDERED, that the trial in the matter be continued to September 1991 or such other date [as] this Court shall subsequent[ly] set and

"IT IS FURTHER ORDERED, that

"A. The Defendants, Schrodel, shall give, to the Plaintiffs, full access to the property, the subject matter of this suit, their agents or employees, as shall be necessary in the sole discretion of the County in order to attempt to obtain a permit for a landfill on the property. In the event a permit is issued which allows the use of the Defendants' property for a landfill, Defendants shall not be permitted to contest the taking of their land by the Plaintiffs for the construction of a landfill.

"B. The damages, if any, to which the Defendants, Schrodel, shall be entitled as a result of the condemnation of the property ... shall be limited to those damages which the Defendants could have proven as of March 26, 1990.

"C. [Subsequently deleted by the circuit court]

"D. The Defendants, Schrodel, shall maintain the property, the subject matter of this action, in the relatively same condition as it was on March 26, 1990, normal wear and tear excepted.

"E. The Plaintiffs, County, shall have the right as part of their efforts to obtain a permit for a landfill [on] the Defendants', Schrodel, property [to] construct certain wells on the said property. In the event no permit is issued, the Plaintiffs, County, shall pay to the Defendants, Schrodel, the sum of Thirty Thousand Dollars ($30,000.00) in damages for the wells which were constructed, the said monies to be paid within thirty (30) days of the denial of the said permit.

"All subject to the further order of this Court.

"/s/ G. Edward Dwyer, Jr.
JUDGE DWYER"

The County filed a notice of appeal from this order on April 2, 1990, and on the next day filed separate petitions in

this Court for a writ of certiorari and a writ of mandamus, arguing that the circuit court's order was improper. The County also moved this Court to expedite consideration of the petitions and advance oral argument. We granted the petition for a writ of certiorari and advanced oral argument. In light of our decision on the appeal, we need not consider the mandamus petition; it shall be denied as moot.

The Schrodels first argue that the circuit court's order was not appealable. They also maintain that, if appealable, the order was appropriate and should be affirmed.

## I.

The first issue is whether the March 29, 1990, order of the Circuit Court for Frederick County is appealable. Under Maryland Code (1974, 1989 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article, an appeal may be taken from a "final judgment." In addition, § 12–303 of the Courts and Judicial Proceedings Article authorizes appeals from a few specified interlocutory orders, including an interlocutory order granting an injunction.

Ordinarily a judgment is final, for purposes of an appeal under § 12–301, "only if it terminates the action in [the trial] court." *Bunting v. State*, 312 Md. 472, 476, 540 A.2d 805, 806 (1988). Obviously the circuit court's order of March 29, 1990, was not final under this principle, as it did not terminate the condemnation action. We have, however, adopted the so-called "collateral order doctrine" which "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court." *Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 206, 477 A.2d 759, 762 (1984). *See, e.g., State v. Jett*, 316 Md. 248, 251, 558 A.2d 385 (1989); *Bunting v. State, supra*, 312 Md. at 476–477, 540 A.2d at 806; *Harris v. Harris*, 310 Md. 310, 315–316, 529 A.2d 356 (1987); *Clark v. Elza*, 286 Md. 208, 212, 406 A.2d 922 (1979); *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 91–92, 394 A.2d 801 (1978). *See*

*also Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–547, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528 (1949).

■ In arguing that it was entitled to appeal the order of March 29, 1990, the County primarily relies upon the collateral order doctrine. In its petition for a writ of certiorari, the County also made the alternate argument that the appeal was authorized by § 12–303(3)(i) of the Courts and Judicial Proceedings Article, which, as previously mentioned, authorizes an appeal from an interlocutory order granting an injunction.

Before deciding whether the March 29, 1990, order is appealable under either of the County's theories, it is necessary to determine precisely what the March 29th order does. According to the County, the order

"has the effect of enjoining the County from proceeding with its condemnation action until the County obtains a MDE [Maryland Department of the Environment] permit to construct a landfill on the Schrodel's property some two years from now."

The Schrodels contend, however, that the trial judge merely "postponed the trial date to a date certain in September 1991," without any condition that the County obtain the permit. We agree with the County.

The County's position is supported by the language on the face of the order. The trial court expressed concern "that the County may condemn the … property and thereafter be unable to use same for a landfill should the permit not be granted." In fact, all four substantive paragraphs in the order, prior to the operative portion of the order, addressed the permit procurement procedure and nothing else. The circuit court noted that it was asked "to continue this matter until such a permit is granted." There was no mention in the order of the separate suit, the Schrodels' missing expert witness, or any other ground for the postponement. The new trial date was eighteen months away, based on the anticipated time for the permit process to run its course. The date was far from "certain," being "Sep-

tember 1991 or such other date [as] this court shall subsequent[ly] set." Finally, those portions of the order which were directed at the Schrodels were aimed at facilitating the permit process.

The hearing leading up to the order also supports the County's position. The Schrodels clearly asked the court to continue the case "until such time as a permit is issued for the landfill." The Schrodels stated that, if the County obtained the permit, there would "be a much simpler and much shorter trial" where "the only issue before the court will be the value." The court acknowledged that the request was for "reversing the order" by "doing the testing first." The court, in setting the trial date, stated that it was estimating that the permit process would be finished by September 1991, and if it was not, a later date would be set.

Consequently, the circuit court's order of March 29, 1990, was not simply an order postponing the trial. Rather, it was an order staying the condemnation action until the County obtained a permit to construct a landfill on the Schrodel's property. As such, we believe that the order was appealable under the collateral order doctrine. It is not necessary, therefore, to determine whether the order was also appealable as an interlocutory order granting an injunction.

Following the lead of the Supreme Court, we have generally held that, for an order to be appealable under the collateral order doctrine, it must meet four requirements:

" '[T]he order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue [, (3) be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment.' "

*Clark v. Elza, supra,* 286 Md. at 213, 406 A.2d at 925, quoting *Peat & Co. v. Los Angeles Rams, supra,* 284 Md. at 92, 394 A.2d at 804. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *Cohen v. Beneficial Industrial Loan Corp., supra,* 337

U.S. at 545–547, 69 S.Ct. at 1225–1226; *State v. Jett, supra,* 316 Md. at 251, 558 A.2d at 386, and cases there cited.

As the March 29th order has the effect of blocking the County from prosecuting its condemnation action against the Schrodels unless and until it obtains a state permit to construct the landfill on the property, the order satisfies all four requirements of the collateral order doctrine.

First, the order conclusively determined that the County must wait until it receives a permit from the Maryland Department of the Environment before it can go to trial with its condemnation action. Second, the issue of whether a court can lawfully impose such a condition on the government's power to acquire property by condemnation is clearly important. Many essential public projects begin with a taking of land and require various permits before completion.

Third, the question of whether the County can be required to obtain the permit before having a trial is obviously distinct from the trial itself. The Schrodels argue that the property is not *needed* for a public purpose unless the County can procure the permit, and thus the order is not separate from the merits of the action. This argument might have merit if the trial court had merely ordered that the County was required to prove at trial that it would probably get the permit. The court's March 29th order, however, is unrelated to the issues to be litigated at the trial. It is an order that there will be no trial until the permit is actually procured.

Fourth, if not appealable until the trial's conclusion, the claim that the County's right to condemn cannot be conditioned on first obtaining all necessary permits would irretrievably be lost. The government already will have had to comply with a possibly unlawful condition. If the County were to get the permit, it would take the property after a trial on value only, and the issue of whether the court could impose the condition would be moot on appeal. *See Johnson v. State of Tex.,* 878 F.2d 904, 905 (5th Cir.1989) ("once

Johnson goes through the requirement of exhausting his state remedies by way of habeas corpus [before proceeding with an action under 42 U.S.C. § 1983], the issue [of] whether he was required to do so or not will be moot"). Meanwhile, the County, having gone through an expensive and time-consuming permit process, would be in a position where it would be difficult to exercise its right to abandon the taking if it considered the jury award to be unreasonably high. Moreover, the County would have to wait until it gets the permit to begin preparing the property for a landfill. If it had the property now, it could begin that work today.

The Schrodels argue that we should not let "[e]very ruling on a request for a postponement ... result in an appealable order...." We emphatically agree that a trial court's decision on a motion for a postponement, continuance, or stay is ordinarily not appealable. *Highfield Water Co. v. Wash. Co. San.*, 295 Md. 410, 417, 456 A.2d 371 (1983); *Waters v. Smith*, 277 Md. 189, 352 A.2d 793 (1976). *See Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 10 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983) (as a "usual rule ... a stay is not ordinarily a final decision"). *See also, e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 1136–1138, 99 L.Ed.2d 296 (1988); *Silberkleit v. Kantrowitz*, 713 F.2d 433, 434 (9th Cir.1983); *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732 (3rd Cir.1983); *Haberern v. Lehigh & N.E. Ry. Co.*, 554 F.2d 581, 584 (3rd Cir.1977).

Nonetheless, appellate courts have entertained appeals from trial court rulings postponing or staying actions, under circumstances analogous to those here. In *Moses H. Cone Memorial Hosp. v. Mercury Const., supra*, 460 U.S. at 11–13, 103 S.Ct. at 934–935, the Supreme Court held that a federal district court order staying an action to compel arbitration under the United States Arbitration Act, pending resolution of a state court proceeding between the same two parties involving the identical issue, was appealable under the collateral order doctrine. The Court character-

ized the order as one "that amounts to a refusal to adjudicate the merits," 460 U.S. at 12, 103 S.Ct. at 935. In *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), the Court held that a federal district court's refusal to convene a three-judge court (for a suit challenging the constitutionality of a state statute), coupled with a stay of federal proceedings, was reviewable, emphasizing "that '[a]ppellant was effectively out of court.'" 370 U.S. at 715 n. 2, 82 S.Ct. at 1296 n. 2. *See Cheyney State College Faculty v. Hufstedler, supra,* 703 F.2d at 735 ("An indefinite stay order that unreasonably delays a plaintiff's right to have his case heard is appealable"); *Haberern v. Lehigh & N.E. Ry. Co., supra,* 554 F.2d 581 (holding that an appeal could be taken from an indefinite stay order under the collateral order doctrine). *See also Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.,* 887 F.2d 1213, 1218–1221 (3rd Cir.1989); *Johnson v. State of Tex., supra,* 878 F.2d 904.

There is no danger that allowing an appeal in this case will lead to a proliferation of interlocutory appeals from stay and postponement orders. The circuit court granted no ordinary postponement of the trial. Not only is the length at least eighteen months, but it is certain that there will never be a trial if the County fails to obtain the permit. The order in this case assures that if the County does get the permit, only then can it prepare the property as a landfill. An important government prerogative has been delayed or defeated because of an allegedly unlawful condition. The vast majority of postponement orders, in contrast, merely require a party to wait longer for trial.

We conclude, therefore, that the March 29, 1990, order was appealable under the collateral order doctrine. It should be emphasized, however, that this is a case where "our holding concerning appealability goes no further than the circumstances presented in this case." *Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. at 210, 477 A.2d 759.

## II.

██ "[T]he power of eminent domain adheres to sovereignty and requires no constitutional authority for its existence." *Lore v. Board of Public Works*, 277 Md. 356, 358, 354 A.2d 812, 814 (1976). This power is limited by Art. III, § 40, of the Constitution of Maryland[1] and the Fifth Amendment to the United States Constitution,[2] which prohibit the taking of private property for public use without just compensation.

In Code (1957, 1987 Repl.Vol., 1989 Supp.), Art. 25, § 11A(a)(1)(i), the General Assembly authorized the County Commissioners of Frederick County to "[a]cquire by ... condemnation ... any property ... of any kind needed for any public purpose...." Art. 25, § 14A(a)(5), specifically provides that the commissioners may "[a]cquire land ... as needed for [disposal of refuse, garbage, or rubbish] ... by ... condemnation."

By a resolution dated September 13, 1989, the County Commissioners found that "it is necessary and in the public interest to expand the [current] sanitary landfill" and that "the best location for the [new] sanitary landfill ... is land near the existing landfill." The Commissioners resolved that "[i]t is necessary and in the public interest to acquire the 230.02 acre site owned by the Schrodels to expand the landfill...." They directed the County Attorney to bring a condemnation action because negotiations to purchase the property had been unsuccessful.

The Schrodels' position is that the County has "no need for the Defendants' property" because the County will not

---

1. Art. III, § 40, of the Constitution of Maryland provides:
   "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

2. The Fifth Amendment to the United States Constitution mandates: "nor shall private property be taken for public use, without just compensation."

be able to use it for a landfill. As explained in their brief (Appellees' Brief, pp. 32–33),

> "[t]he Schrodels challenge the necessity of the taking in the present case on the grounds that the County cannot consummate its stated public purpose of establishing a landfill on the property.... The Schrodels wish to establish ... that, more probably than not, MDE [Maryland Department of the Environment] will refuse to issue the mandatory permit for establishing a landfill, thus making the taking an arbitrary and unreasonable exercise of eminent domain power...."

While Art. 25, §§ 11A(a)(1)(i) and 14A(a)(5), require that the land to be condemned be "needed" by the County, a Maryland court's role in reviewing a condemning authority's decision that particular land is "needed" is clearly not as broad as the Schrodels maintain.

██ In a passage that has been repeatedly cited by this Court for sixty years, Judge Offutt for the Court in *Murphy v. State Roads Comm'n*, 159 Md. 7, 15, 149 A. 566, 570 (1930), summarized the judiciary's very limited role concerning governmental need for the property:

> "Ordinarily the question of whether a proposed [location] is required by public necessity is legislative rather than judicial.... [T]he decision ... as to the public necessity for taking particular property is not subject to judicial review unless [the] decision *is so oppressive, arbitrary or unreasonable as to suggest bad faith.*"

(Emphasis added).

*See, e.g., Anne Arundel County v. Burnopp*, 300 Md. 343, 348–349, 478 A.2d 315, 318 (1984); *Bouton v. Potomac Edison Co.*, 282 Md. 142, 151, 383 A.2d 669, 674 (1978); *Free State Realty v. City of Baltimore*, 279 Md. 550, 558, 369 A.2d 1030, 1034 (1977); *Director v. Oliver Beach Imp. Ass'n*, 259 Md. 183, 188–189, 269 A.2d 615 (1970); *Wash. San. Comm. v. Santorios*, 234 Md. 342, 346, 199 A.2d 206 (1964); *Ligon v. Potomac Elec. Pow. Co.*, 219 Md. 438, 439, 149 A.2d 376 (1959). In this case, where the County Commissioners of Frederick County have adopted a resolution

finding a need to take the property for what is clearly a public purpose, the burden is on the Schrodels to show that the County's decision "is so oppressive, arbitrary or unreasonable as to suggest bad faith." *See Free State Realty v. City of Baltimore, supra,* 279 Md. at 558–560, 369 A.2d at 1034–1035. The Schrodels have at no time alleged facts sufficient to meet this standard.

■ The Supreme Court, in *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), addressed the possibility that a condemnation scheme might not achieve the legislative goals. The Hawaii Land Reform Act of 1967, in attempting to eliminate a land oligopoly, enabled certain lessees to ask the State to condemn the property on which they lived, and then sell the land to the lessees. In evaluating the Act under the Fifth Amendment to the United States Constitution, the Court reasoned (467 U.S. at 242–243, 104 S.Ct. at 2330):

> "Of course, this Act, like any other, may not be successful in achieving its intended goals. But 'whether *in fact* the provision will accomplish its objectives is not the question: the [constitutional requirement] is satisfied if ... the ... [state] Legislature *rationally could have believed* that the [Act] would promote its objective.' *Western & Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 671–672, 101 S.Ct. 2070, 2084–2085, 68 L.Ed.2d 514 (1981);

> *         *         *         *         *         *

> "When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings—no less than debates over the wisdom of other kinds of socioeconomic legislation—are not to be carried out in the federal courts."

This analysis is relevant to the case before us today. There are many governmental projects which begin with a taking and which require one or more permits before completion. When a governmental unit decides to acquire property by eminent domain, it runs the risk that it may fail to obtain

those permits. The decision to obtain a particular piece of property for a landfill is a legislative or executive decision. If a condemning authority believes that it will obtain the permits necessary to complete a project, Maryland courts should not engage in predicting whether the permits will be granted or denied. Nor should courts prevent the government from proceeding with a condemnation action until it actually obtains all necessary permits. Otherwise the judiciary will be exceeding its proper role under this Court's decisions.

The Schrodels' rely on eight out-of-state cases. *See Seadade Industries, Inc. v. Florida Power & Light Co.*, 245 So.2d 209, 215 (Fla.1971); *Mann v. City of Marshalltown*, 265 N.W.2d 307, 315 (Iowa 1978); *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 523 P.2d 755, 769 (1974); *Northern Kentucky Port Authority v. Cornett*, 625 S.W.2d 104, 105 (Ky.1981); *Sellors v. Town of Concord*, 329 Mass. 259, 107 N.E.2d 784, 786 (1952); *City of Helena v. DeWolf*, 162 Mont. 57, 508 P.2d 122, 129–130 (1973); *State v. Malibu Beach, Inc.*, 209 N.J.Super 291, 507 A.2d 316, 321 (1986); *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 248 N.W.2d 885, 893 (1977). Preliminarily, we note that not one of these cases stands for the proposition that a court can postpone a condemnation action until the condemning authority obtains all necessary permits. Indeed, some of these cases have expressed the contrary view. *See Seadade Industries, Inc. v. Florida Power & Light Co., supra*, 245 So.2d at 214 ("It would be unreasonable to allow canal construction to begin only after all permissions have been granted"); *Northern Kentucky Port Authority v. Cornett, supra*, 625 S.W.2d at 105 ("It is not conceivable that all phases of the development ... be completed ... before condemnation proceedings may be instituted"); *Sellors v. Town of Concord, supra*, 329 Mass. at 263, 107 N.E.2d at 786 ("it would be unreasonable to hold that the town could not exercise the power of eminent domain until all steps necessary to the carrying out of the projects had been taken").

Moreover, four of the eight cases (*Seadade, Concerned Citizens, Cornett,* and *Falkner* ) involved utilities, not governmental entities. In Maryland the General Assembly has demonstrated that it will place preconditions on a utility's exercise of eminent domain power, when the Legislature concludes that the conditions are appropriate. *See, e.g.,* Code (1957, 1988 Repl.Vol., 1989 Supp.), Art. 78, § 54A, which provides that an electric company may not exercise the right of eminent domain in connection with the construction of a generating station or overhead transmission line, designed to carry more than 69,000 volts, unless it first obtains a certificate of public convenience and necessity from the Public Service Commission. There are no similar provisions requiring a Maryland governmental entity to obtain permits when it chooses to condemn land.

Of the four cases relied on by the Schrodels which involve governmental entities, two cases (*Sellors* and *Malibu Beach* ) merely note that the complaining owners did not produce any evidence that the government could not expect to achieve its public purpose. The cases did not purport to announce any test. As counsel for the Schrodels acknowledged at oral argument before us, *City of Helena v. De-Wolf, supra,* is the only case of the eight cited by the Schrodels in which a court actually held that the government could not take the property it desired. That case is easily distinguishable from the present one, for the Supreme Court of Montana was applying eminent domain statutes requiring that "the least private injury must be considered, at least in the context of the Urban Renewal plan." 162 Mont. at 63, 508 P.2d at 126. There is no similar provision in Maryland concerning a county's authority to condemn property for a landfill.

█ Thus, the trial judge erred in granting the postponement, and we shall reverse that order. The case should be scheduled for a prompt trial. Moreover, if the Schrodels desire a hearing before the circuit court on the question of public necessity under the "so oppressive, arbitrary or unreasonable as to suggest bad faith" test set forth in

*Murphy v. State Roads Comm'n, supra,* the circuit court should promptly hold such hearing.

In conclusion, the following words of Judge Smith for the Court, in *Director v. Oliver Beach Imp. Ass'n, supra,* 259 Md. at 188, 191, 269 A.2d at 618–619, are instructive:

> "It is not at all unusual for the exercise of the power of eminent domain to run counter to local desires. It is not every public improvement by way of building, park, road or otherwise which receives unanimous local approval.
>
> \*       \*       \*       \*       \*       \*
>
> "However valid and reasonable [certain] contentions of local interests may appear in the realm of the political, they fall far short of legally establishing bad faith. If local residents were to be permitted to substitute their desires for the overall plan of the sovereign authority for any given tract of land sought to be condemned, however worthwhile their desires might be, the construction of public improvements would become most difficult."

PETITION FOR A WRIT OF MANDAMUS DENIED. ORDER OF MARCH 29, 1990, REVERSED, AND CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEES TO PAY COSTS.