701 A.2d 92

**LOOC, INC. d/b/a Domino's Pizza and Domino's Pizza, Inc.**

v.

**Prabhjot S. KOHLI.**

**No. 41, Sept. Term, 1996.**

Court of Appeals of Maryland.

Oct. 9, 1997.

James P. Garland (Kathleen Pontone, Margaret A. Jacobsen, Miles & Stockbridge, on brief, Baltimore, Francyne Stacey, Pear, Sperling, Eggan & Muskovitz, on brief, Ann Arbor, MI), for petitioner.

Jonathan Sills, Asst. General Counsel, Maryland Com'n on Human Relations (Glendora C. Hughes, General Counsel; Stephen W. Godoff, Godoff & Zimmerman, all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J.,* ELDRIDGE, RODOWSKY, KARWACKI *, BELL and RAKER, JJ., and MARVIN H. SMITH, Judge (retired), Specially Assigned.

ELDRIDGE, Judge.

This appeal is from an order of the Circuit Court for Baltimore County requiring the petitioners, LOOC, Inc. and Domino's Pizza, Inc., immediately to comply with a decision and order of the Maryland Commission on Human Relations.[1] Because the circuit court, under the circumstances, erred in ordering compliance with the Commission's decision and order at this stage in the proceedings, we shall reverse.

## I.

The controversy began in December 1987, when Prabhjot Kohli applied for a job with Domino as a manager in training. Domino denied his application under a company-wide no-beard policy because Mr. Kohli refused to shave his beard, which he wears for religious reasons. In January 1988, Mr. Kohli filed a complaint with the Maryland Human Relations Commission, asserting that rejection of his employment application under these circumstances constituted religious discrimination.

After lengthy administrative and judicial review proceedings, and after the case was remanded back to the Commission

---

* Murphy, C.J., and Karwacki, J., participated in the hearing of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and the adoption of this opinion.

1. Domino's Pizza, Inc., is the franchisor and LOOC, Inc., is the franchisee. We shall hereafter in this opinion refer to both petitioners collectively as "Domino."

by the Circuit Court for Baltimore County,[2] the Commission's Appeal Board on January 17, 1996, issued a final administrative decision and order pursuant to Maryland Code (1957, 1994 Repl.Vol., 1997 Supp.), Art. 49B, §§ 3(d), 11, 15(f), and 16, and the Administrative Procedure Act, Code (1984, 1995 Repl. Vol.), § 10–221 of the State Government Article. The Commission found that Domino had engaged in unlawful religious discrimination in its employment practices in violation of Art. 49B, § 16, and ordered Domino to revise its no-beard policy, to pay Mr. Kohli back pay, and to offer him the next available position as a manager in training.[3]

---

**2.** The circuit court's remand was pursuant to a judgment by the Court of Special Appeals. *See Kohli v. LOOC, Inc.,* 103 Md.App. 694, 654 A.2d 922 (1995). There was no petition for a writ of certiorari filed in this Court requesting review of that judgment by the Court of Special Appeals.

**3.** The Commission's Final Decision and Order stated, in relevant part as follows:

"ORDERED, that [Domino] shall cease and desist from discriminating against any individual on the basis of religion; and it is further

"ORDERED, that [Domino] shall revise its 'no-beard' policy to accommodate individuals unable to shave because of religious beliefs by allowing use of a beard net; and it is further

"ORDERED, that [Domino] shall pay to [Mr. Kohli] the sum of $4,495.09, plus a bonus of $1,260 at 6% interest as back pay for the period from December 14, 1987 through December 13, 1989; and it is further

"ORDERED, that [Domino] shall offer to [Mr. Kohli] the next available position of a manager in training with no loss of benefits; and it is further ordered

"ORDERED, that [Domino] shall designate a specific individual as [Domino] representative for the purpose of complying with this Order. The Commission's Director of Compliance Review will serve as the Commission's representative for purposes of monitoring compliance with this Order; and it is further

"ORDERED, that the Commission shall monitor and review compliance with the terms of this Order. [Domino] shall make available any further information as may be necessary for adequate review. Upon non-compliance with the terms of this Order, the Commission shall indicate the precise steps necessary to correct said violations of this Order. Thereafter, [Domino] shall have twenty (20) days in which to comply with the direction to correct violations and to so notify the Commission. If at the conclusion of this period, the violations have not been corrected, the Commission shall take appro-

On February 13, 1996, in accordance with the judicial review section of the Administrative Procedure Act, § 10–222 of the State Government Article, Domino filed in the Circuit Court for Baltimore County a petition for judicial review of the Commission's decision and order. At the same time, Domino filed a motion to "stay" the decision and order pursuant to Maryland Rule 7–205 and § 10–222(e) of the State Government Article, and Domino requested a hearing.[4] The circuit court on March 18, 1996, without a hearing, denied the motion to stay. Domino then filed a motion for reconsideration and another request for a hearing. The circuit court denied this motion in an order dated May 14, 1996. The court's May 14th order, however, went beyond a simple denial of the motion to reconsider. The circuit court also ordered

"that [Domino] shall immediately comply with the Decision and Order of the Maryland Commission on Human Relations pending this Court's consideration of [Domino's] appeal."[5]

On May 17, 1996, the Commission sent a letter to Domino demanding that Domino take certain action in accordance with the final decision and order of the Commission, and stating:

---

priate action, including the institution of judicial proceedings, to secure compliance with this Order."

**4.** Maryland Rule 7–205 states as follows:

"The filing of a petition does not stay the order or action of the administrative agency. Upon motion and after hearing, the court may grant a stay, unless prohibited by law, upon the conditions as to bond or otherwise that the court considers proper."

Section 10–222(e) of the State Government Article provides:

"(e) *Stay of enforcement.*—(1) The filing of a petition for judicial review does not automatically stay the enforcement of the final decision.

"(2) Except as otherwise provided by law, the final decision maker may grant or the reviewing court may order a stay of the enforcement of the final decision on terms that the final decision maker or court considers proper."

**5.** The May 14th order had been prepared and submitted by the Commission. The court signed the order as submitted, without making any changes.

"If, Domino fails to immediately act in accord with the orders of the Commission and circuit court, on Thursday, May 23, 1996, the Commission will file a Petition for Contempt."

Domino, on May 20, 1996, filed a notice of appeal to the Court of Special Appeals from the circuit court's order of May 14, 1996. At the same time, Domino filed in the Court of Special Appeals a motion to stay the circuit court's order pending appeal. The Court of Special Appeals denied the motion for a stay. Shortly thereafter, and prior to the filing of briefs in the Court of Special Appeals, Domino filed in this Court a petition for writ of certiorari and a motion to stay the circuit court's order. This Court granted the petition for a writ of certiorari and ordered that the circuit court's May 14th order be stayed pending the decision by this Court. *LOOC, Inc. v. Kohli,* 342 Md. 582, 678 A.2d 1047 (1996).

Domino argues that the circuit court's compliance order of May 14, 1996, constituted a preliminary or interlocutory injunction which violated the Maryland Rules regarding injunctions, presently codified as Maryland Rules 15–501 through 15–505. Alternatively, Domino contends that the order was unauthorized under the statutory provisions governing the Human Relations Commission and the enforcement of the Commission's orders, Code (1957, 1994 Repl.Vol., Supp.1997), Art. 49B.

The Commission, on the other hand, asserts that the circuit court's order of May 14, 1996, went no further than its earlier order of March 18, 1996, which had simply denied Domino's motion for a stay. The Commission contends that any court order denying a stay of an administrative "cease and desist" or similar administrative order is "injunctive in effect as are all orders denying requests for stay of injunctive agency orders" (Commission's brief at 14), and that the earlier March 18th order denying a stay "required and commanded [Domino] . . . to do exactly what the Commission's final decision and Order required and commanded" (*id.* at 15). Because, in the Commission's view, the earlier March 18th circuit

court order had the same "injunctive effect" (*id.* at 14) as the later May 14th circuit court order, the Commission contends that Domino's notice of appeal should have been filed within 30 days of March 18th. Since the notice of appeal was filed on May 20, 1996, more than 30 days from March 18th, the Commission maintains that the appeal should be dismissed as untimely.[6] The Commission further argues that, even if Domino's appeal were timely, there was neither a violation of the Maryland Rules concerning injunctions nor of Art. 49B. Again, the Commission views the May 14th order as going no farther than the March 18th order denying a stay. While stating that a court order denying a stay of an administrative cease and desist order has "injunctive effect," the Commission asserts that such a court order is not subject to the Maryland Rules regulating injunctions. Finally, the Commission contends that the circuit court's order was authorized by Art. 49B.

## II.

We agree with Domino's argument that the circuit court's May 14, 1996, compliance order both violated the Maryland Rules regulating injunctions and was unauthorized by Art. 49B. We flatly reject the Commission's theory that the May 14th and earlier March 18th orders were identical in effect and that Domino's appeal was untimely.

## A.

The circuit court's order of March 18, 1996, simply denying a motion to stay the administrative decision and order, was in no sense an "injunction" as contended by the Commission. It was not a court "order mandating or prohibit-

---

6. An order granting an injunction, including an interlocutory or preliminary injunction, is appealable under Code (1974, 1995 Repl.Vol., Supp.1997), § 12–303(3)(i) of the Courts and Judicial Proceedings Article. *See, e.g., County Comm'rs v. Schrodel,* 320 Md. 202, 209–210, 577 A.2d 39, 43 (1990); *Board of Trustees v. Sherman,* 280 Md. 373, 374 n. 1, 373 A.2d 626, 627 n. 1 (1977). Under Maryland Rule 8–202(a), the appeal must be taken within 30 days after the entry of the "order from which the appeal is taken."

ing a specified act," and thus did not amount to an "injunction" as defined by Maryland law.[7] Although the March 18th denial of the motion for a stay left the earlier administrative decision operative, to the same extent as it was operative when rendered by the Commission, nothing in the *court's* order of March 18th required or prohibited any party from doing anything. To whatever extent, if any, immediate action was then required, such requirement resulted entirely from the Commission's order and not the court's order. No party could have been held in contempt for violating the March 18th court order.

Moreover, we have held "that a trial court's decision on a motion for a ... stay is ordinarily not appealable" as a grant or denial of an injunction, *County Comm'rs v. Schrodel*, 320 Md. 202, 213, 577 A.2d 39, 45 (1990). *See, e.g., Highfield Water Co. v. Washington County Sanitary District*, 295 Md. 410, 416–417, 456 A.2d 371, 374 (1983) (stay or refusal to stay proceedings in the same matter ordinarily does not constitute the grant or denial of an injunction), and cases there cited; *Waters v. Smith*, 277 Md. 189, 195–197, 352 A.2d 793, 796–798 (1976). Under our cases, the March 18th order denying a stay was not an order granting or denying an injunction, and Domino could not have filed an appeal from that order pursuant to Code (1974, 1995 Repl.Vol., Supp.1997), § 12–303(3)(i) of the Courts and Judicial Proceedings Article.

The May 14, 1996, order, however, did constitute the granting of the injunction. The circuit court on May 14th

---

7. Maryland Rule 15–501 states as follows:

  "**Rule 15–501. INJUNCTIONS—DEFINITIONS**

  "The following definitions apply in the rules in this Chapter:

  (a) **Injunction.**—'Injunction' means an order mandating or prohibiting a specified act.

  (b) **Preliminary Injunction.**—'Preliminary injunction' means an injunction granted after opportunity for a full adversary hearing on the propriety of its issuance but before a final determination of the merits of the action.

  (c) **Temporary Restraining Order.**—'Temporary restraining order' means an injunction granted without opportunity for a full adversary hearing on the propriety of its issuance."

ordered that Domino "shall immediately comply with the Decision and Order of the Maryland Commission on Human Relations...." This was a court order "mandating ... a specified act;" it therefore fell within the definition of "injunction" set forth in Rule 15–501(a). If this Court had not stayed the May 14th order, and if Domino had not complied with it, Domino could have been subject to contempt proceedings.

Furthermore, because the May 14th order did not contain an expiration date "not later than ten days after issuance," it was not a valid temporary restraining order.[8] In substance, the order was a preliminary injunction. Nevertheless, it was erroneously issued without giving Domino an opportunity for a hearing. Rule 15–505(a) states, without exceptions, as follows:

---

8. Rule 15–504 states in pertinent part as follows:

   **"Rule 15–504. TEMPORARY RESTRAINING ORDER**
   "(a) **Standard for Granting.**—A temporary restraining order may be granted only if it clearly appears from specific facts shows by affidavit or other statement under oath that immediate, substantial, and irreparable harm will result to the person seeking the order before a full adversary hearing can be held on the propriety of a preliminary or final injunction."

   \* \* \*

   "(c) **Contents and Duration.**—In addition to complying with rule 15–502(e), the order shall (1) contain the date and hour of issuance; (2) define the harm that the court finds will result if the temporary restraining order does not issue; (3) state the basis for the court's finding that the harm will be irreparable; (4) state that a party or any person affected by the order may apply for a modification or dissolution of the order on two days' notice, or such shorter notice as the court may prescribe, to the party who obtained the order; and (5) set forth an expiration date, which shall be not later than ten days after issuance for a resident and not later than 35 days after issuance for a nonresident. The order shall be promptly filed with the clerk. On motion filed pursuant to Rule 1–204, the court by order may extend the expiration date for no more than one additional like period, unless the person against whom the order is directed consents to an extension for a longer period. The order shall state the reasons for the extension."

   In addition to not complying with the requirement of an expiration date not later than ten days from issuance, the order did not comply with other requirements set forth in paragraphs (a) and (c) of Rule 15–504.

"**Rule 15–505. PRELIMINARY INJUNCTION**

"(a) **Notice.**—A court may not issue a preliminary injunction without notice to all parties and an opportunity for a full adversary hearing on the propriety of its issuance."

Since the injunctive portion of the May 14th order was not issued in accordance with the rules, it must be reversed.

### B.

Alternatively, even if the injunctive portion of the May 14th order had been issued in compliance with Rules 15–501 through 15–505, reversal would be required under the provisions of Art. 49B. The statutory provisions applicable to the Human Relations Commission do not authorize such an order at the time and under the circumstances.

In contending that it was authorized to seek the compliance portion of the May 14th order, and that the circuit court was authorized to grant its request, the Commission relies upon Art. 49B, § 12(a). That subsection provides as follows:

"**§ 12. Enforcement of Commission's orders;** * * *

"(a) If any respondent refuses to comply with an order of the Commission made within the scope of any of these subtitles, the Commission may, represented by its general counsel, institute litigation in the appropriate equity court of the county or in Baltimore City where the alleged discrimination took place to enforce compliance with any of the provisions of this article.

"The court, in hearing said case, shall be governed by the judicial review standards as set forth in the Administrative Procedure Act, Title 10, Subtitle 2 of the State Government Article of the Annotated Code of Maryland."

The Commission's reliance on § 12(a) is misplaced for two reasons.

First, the Commission filed no pleading which could reasonably be construed as the institution of an enforcement action under § 12(a). The mere submission of a proposed order to be signed by a judge, in response to the other side's motion to reconsider the denial of a stay, can hardly be viewed as the "institut[ion of] litigation … to enforce compliance with any

of the provisions of this article." The Legislature did not provide in Art. 49B, § 12(a), that whenever "any respondent" institutes an action for judicial review of the Commission's decision, there is automatically an enforcement action before the court, and that the court can order compliance under § 12(a) without a request by the Commission.[9]

Second, and more importantly, § 12(a) states that, "in hearing" the Commission's enforcement action, the court shall be governed by the judicial review standards of the Administrative Procedure Act, Code (1984, 1995 Repl.Vol.), § 10–222(g) of the State Government Article.[10] Consequently, it is obvious that Art. 49B, § 12(a), contemplates that a court decision, mandating compliance with the Commission's order, be rendered only after the court applies the judicial review standards of the Administrative Procedure Act. A court order under § 12(a) cannot properly be rendered until the court has performed its judicial review function and determined, in light

---

**9.** Some statutory schemes have such a provision. *See, e.g.,* the judicial review section of the National Labor Relations Act, 29 U.S.C. § 160(f).

**10.** Section 10–222(g) of the State Government Article provides as follows:

"(g) *Proceeding.*—(1) The court shall conduct a proceeding under this section without a jury.

(2) A party may offer testimony on alleged irregularities in procedure before the presiding officer that do not appear on the record.

(3) On request, the court shall:

(i) hear oral argument; and

(ii) receive written briefs.

(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

of the issues raised by the parties, whether the administrative decision should be upheld under the standards of the Administrative Procedure Act and enforced. Art. 49B, § 12(a), does not authorize interlocutory compliance pending judicial review in the circuit court.

The only provision of Art. 49B authorizing the commission to seek, and the court to grant, relief of an interlocutory nature is § 4. Art. 49B, § 4, states as follows:

"§ 4. **Power to bring civil actions for temporary injunction; where brought.**

"At any time after a complaint has been filed, if the Commission believes that appropriate civil action is necessary to preserve the status of the parties or to prevent irreparable harm from the time the complaint is filed until the time of its final disposition, the Commission may bring action to obtain a temporary injunction. The action shall be brought in the circuit court for the county where the place of public accommodation which is the subject of the alleged discrimination is located, or where the unlawful employment practice is alleged to have occurred, or where the dwelling which is the subject of the alleged discrimination is located."

This Court in *St. Comm'n On Human Rel. v. Amecom Div.*, 278 Md. 120, 125, 360 A.2d 1, 5 (1976), held that, by enacting Art. 49B, § 4, "the Legislature created an action based on what amounts to a new substantive right." The Court went on to say that § 4

"provides a remedy based, not upon a preexisting right, in this case the right to be free from acts of discrimination in employment, but upon the mere filing of a complaint alleging discriminatory acts. Such an interlocutory remedy, available without a determination on the merits that a preexisting right exists, cannot, then, constitute simply a new method for enforcement of the undetermined right, but must instead be deemed itself to create in effect a new substantive right." *Ibid.*

The Court in *Amecom* held that, under circumstances where § 4 was inapplicable because the alleged discrimination in

employment occurred prior to the effective date of § 4, the Commission had no right to obtain interlocutory judicial relief.

Consequently, Art. 49B, § 4, appears to be the only avenue for the Commission to obtain interlocutory relief from a court. In the instant case, the Commission has eschewed any reliance on § 4. In addition, the Commission filed no pleading seeking relief under § 4, and it made no showing that a preliminary injunction was necessary to prevent irreparable injury.[11] Instead, the Commission has invoked § 12(a), which does not authorize the relief granted in the May 14th, 1996, order. In sum, the injunctive provision of the May 14th order was not authorized by statute and was erroneous.

*ORDER OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED IN PART, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MARYLAND COMMISSION ON HUMAN RELATIONS.*

---

11. Therefore, we need not and do not decide whether § 4 could furnish a basis for the issuance of a preliminary injunction after the Commission's final administrative decision but prior to the final disposition of the judicial review action in the circuit court.